## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**ROBIN D. POST,**

**Plaintiff,**

v.

**DALE R. HANCHETT a/k/a DALE HANCHETT, HANCHETT FARMS & CATTLE CO., LLC, DENNIS J. ZIMMERMAN, KENDALL L. NICHOLS a/k/a KENDALL NICHOLS, JR., and JOHN H. KASER,**

**Defendants.**

**Case No. 21-2587-DDC**

## <u>MEMORANDUM AND ORDER</u>

This case follows a highway accident involving defendant Dennis J. Zimmerman and plaintiff Robin D. Post. On December 23, 2019, defendant John H. Kaser, plaintiff, and Mr. Zimmerman—in that order—were traveling eastbound on Highway 24 in Osborne County, Kansas. Plaintiff rode in a Chevrolet Equinox. Defendants Kaser and Zimmerman each drove semi-trucks. A tire on Mr. Kaser's trailer failed, and Mr. Zimmerman subsequently rear-ended plaintiff.

Defendant Kendall L. Nichols employs defendant Kaser. Defendant Dale R. Hanchett, also known as Hanchett Farms & Cattle Co., LLC, employs defendant Zimmerman. Plaintiff sued Mr. Kaser and Mr. Zimmerman for negligence. Relying on a theory of negligence per se, plaintiff also seeks punitive damages. Plaintiff also sued defendant Nichols and defendant Hanchett, asserting vicarious negligence theories, including negligence per se, based on Mr.

Kaser and Mr. Zimmerman's actions. Plaintiff likewise requested punitive damages against Mr. Nichols and Mr. Hanchett, as well.[1]

Defendants Kaser and Nichols jointly filed a Motion for Partial Summary Judgment (Doc. 97) seeking judgment against plaintiff's request to recover punitive damages from them both. The same motion also seeks summary judgment against plaintiff's theory that Mr. Kaser was negligent per se for driving a semi-truck without a license plate. Zimmerman and Hanchett filed a separate Motion for Partial Summary Judgment (Doc. 95) seeking judgment against plaintiff's request to recover punitive damages from them. Mr. Zimmerman and Mr. Hanchett also seek summary judgment against plaintiff's theory that Mr. Zimmerman is negligent per se because he didn't immediately stop at the scene of the crash and failed to render assistance to plaintiff following the accident.

For reasons explained below, the court denies Mr. Kaser and Mr. Nichols's request for summary judgment on the punitive damage claim. But the court grants defendants Kaser and Nichols summary judgment on plaintiff's theory that Mr. Kaser was negligent per se because he drove a semi-truck without a license plate. The court also denies Mr. Zimmerman and Mr. Hanchett's request for summary judgment against the punitive damage claim. It grants Mr.

---

[1]    Plaintiff's statement of her claims in the Pretrial Order is less than ideal. Specifically, plaintiff asserts "[n]egligence, negligence per se, and/or recklessness, wantonness and/or disregard for the safety of others claim against" Mr. Kaser and Mr. Zimmerman. Doc. 94 at 16 (Pretrial Order ¶¶ 4.a.i., iii.). She asserts "[v]icarious negligence, negligence per se, and/or recklessness, wantonness and/or disregard for the safety of others liability claim against" Mr. Nichols and Mr. Kaser. *Id.* (Pretrial Order ¶¶ 4.a.ii., iv.).

Plaintiff can bring a claim for negligence per se if the statute defendant allegedly violated creates a private right of action. *Cullip v. Domann*, 972 P.2d 776, 782 (Kan. 1999). But recklessness, wantonness, and/or disregard for the safety of others aren't individual claims for relief which can stand on their own. *Smith v. Printup*, 866 P.2d 985, 992 (Kan. 1993) ("A claim for punitive damages is not a 'cause of action' triable to a jury; a punitive damage award is incident to and dependent upon the recovery of actual damages."). So, the court construes plaintiff's claims here as asserting direct and vicarious negligence and negligence per se which—according to plaintiff—warrant punitive damages.

Zimmerman and Mr. Hanchett summary judgment against plaintiff's theory that Mr. Zimmerman was negligent per se because he failed to assist plaintiff immediately after the collision.  It denies their motion in all other respects.

## I.      Background

The following facts come from the summary judgment briefs, the exhibits attached to them, and stipulations made in the Pretrial Order.[2]  Doc. 96.  Where controverted, the court states the facts in the light most favorable to plaintiff, the party opposing summary judgment.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007).  This section of the Order identifies the uncontroverted facts of the December 23, 2019, collision.  The court provides additional undisputed facts about defendants Kaser and Nichols, and Mr. Zimmerman and Mr. Hanchett in the respective analysis sections, below.

Defendant Nichols employs defendant Kaser to drive a semi-truck.  Doc. 102-2 at 7, 8 (Nichols Dep. 28:5–24, 29:11–22).  Defendant Hanchett is the managing member of defendant Hanchett Farms & Cattle Co., LLC.  Doc. 96-4 at 4 (Hanchett Dep. 14:2–4).  Hanchett Farms employs defendant Zimmerman to drive semi-trucks.  Doc. 94 at 2 (Pretrial Order ¶ 2.a.iii.).

On December 23, 2019, Sena Bailey, plaintiff's daughter, drove plaintiff and two other passengers southbound on Highway 281 in a Chevrolet Equinox.  *Id.*; Doc. 96-2 at 8 (Bailey Dep. 29:13–19, 31:20–22).  Plaintiff's vehicle followed two semi-trucks—defendant Zimmerman drove the semi-truck directly in front of plaintiff and defendant Kaser drove the

---

[2]      In the Pretrial Order, plaintiff requested leave to amend the Complaint to include a claim against Mr. Nichols directly for negligence, including various theories of negligence per se, and requesting punitive damages.  Doc. 96 at 22 (Pretrial Order ¶ 6.).  But the deadline to file any motion for leave to amend the pleadings already had passed.  *See* Doc. 30 (Scheduling Order).  Judge Birzer denied plaintiff's request to amend the Scheduling Order to extend the deadline for a motion for leave to amend the Complaint.  The court thus only considers the plaintiff's original claims and doesn't consider the additional claim plaintiff sought leave to amend the Complaint to add.  Doc. 96 at 16 (Pretrial Order ¶ 4.a.).

semi-truck in front of Mr. Zimmerman.  Doc. 96-2 at 16 (Bailey Dep. 63:11–15).  So, the trio

drove in this order:  first Mr. Kaser, then Mr. Zimmerman, followed by Ms. Bailey.  At an

intersection, all three vehicles made a left turn onto Highway 24, heading eastbound.  *Id.* at 17

(Bailey Dep. 66:8–11).  The highway had a mowed, grassy shoulder.  Doc. 96-3 at 23

(Zimmerman Dep. 91:8–19).  After driving about 200 to 300 yards on Highway 24, Ms. Bailey

accelerated—but never exceeded 65 miles per hour—and passed the semi-truck immediately in

front of her—Mr. Zimmerman's.  Doc. 96-2 at 17, 19 (Bailey Dep. 66:8–19, 74:24–75:2).  When

she passed Mr. Zimmerman's semi-truck and pulled back in front of him, the distance between

Ms. Bailey's Equinox and Mr. Zimmerman's semi-truck was about 200 to 300 yards.  *Id.* at 19

(Bailey Dep. 73:23–74:11).  So, at this point, plaintiff's vehicle was situated between Mr. Kaser

and Mr. Zimmerman's semi-trucks—Mr. Kaser ahead of her and Mr. Zimmerman behind her.

After driving another 300 to 400 yards, Ms. Bailey noticed debris on the highway that she

thought was part of a tire from Mr. Kaser's semi-truck.  *Id.* (Bailey Dep. 69:20–70:6).  Ms.

Bailey slowed down, from about 55 miles per hour to 45 miles per hour, and swerved to avoid

the debris.  *Id.* at 19 (Bailey Dep. 74:24–76:2).  Then, Mr. Kaser's tire blew out completely,

emitting smoke and sending a large tire piece into the center of the eastbound lane.  *Id.* at 17–18

(Bailey Dep. 68:20–69:9).  Ms. Bailey checked for oncoming traffic, signaled left, and swerved

into the westbound lane to avoid the tire piece.  *Id.* at 19 (Bailey Dep. 75:17–76:20).  Ms. Bailey

saw a westbound car approaching her.  *Id.* at 24 (Bailey Dep. 94:5–9).  She signaled right and re-

entered the eastbound lane when Mr. Zimmerman's semi-truck was about 75 yards behind her.[3]

*Id.* at 23 (Bailey Dep. 89:17–90:1).  Mr. Zimmerman testified that he was traveling 40 miles per

---

[3]        Mr. Zimmerman and Mr. Hanchett dispute this fact.  In their version of facts, plaintiff's vehicle
was located just four or five feet in front of Mr. Zimmerman's semi-truck when Ms. Bailey reentered the
eastbound lane.  Doc. 96-3 at 20 (Zimmerman Dep. 80:8–17).  For summary judgment purposes, the court
accepts plaintiff's iteration of this disputed fact because she is the non-movant.

hour when his semi-truck made contact with plaintiff's vehicle.  Doc. 96-3 at 20 (Zimmerman Dep. 78:1–9).

Plaintiff has sued defendants for negligence, including various negligence per se theories. Doc. 1.  Plaintiff asserts that her negligence claims warrant compensatory and punitive damages. Doc. 94 (Pretrial Order).  Defendants Kaser and Nichols filed a joint partial motion for summary judgment, contesting plaintiff's request for punitive damages and one negligence per se theory. Doc. 97; Doc. 98.  Mr. Zimmerman and Mr. Hanchett also filed a joint partial motion for summary judgment contesting the same.  Doc. 95; Doc. 96.

The court addresses each motion separately, below.  First, the court addresses Mr. Kaser and Mr. Nichols's motion.  It then takes up Mr. Zimmerman and Mr. Hanchett's motion.  But first, the court recites the well-known summary judgment standard.

## II.    Legal Standard

Under Fed. R. Civ. P. 56(a), a party may move for summary judgment by "identifying each claim . . . on which summary judgment is sought" and showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also In re Aluminum Phosphide Antitrust Litig.*, 905 F. Supp. 1457, 1460 (D. Kan. 1995).  When it applies this standard, the court "view[s] the evidence and make[s] inferences in the light most favorable to the non-movant."  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense."  *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citation and internal quotation marks omitted).  To meet this burden, the moving party "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Id.* (citation and internal quotation marks omitted).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Liberty Lobby*, 477 U.S. at 248–49.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671.  "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  To survive summary judgment, the non-moving party's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Id.*

Finally, summary judgment isn't a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327.  Instead, it serves an important procedural role, "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

## III.      Defendants Kaser and Nichols's Summary Judgment Motion (Doc. 97)

The court begins with Mr. Kaser and Mr. Nichols's motion for summary judgment.  Doc. 97; Doc. 98.  Before addressing their legal arguments, the court first recounts undisputed facts specific to Mr. Kaser and Mr. Nichols's joint motion.

## A.      Background

### *Mr. Nichols*

Mr. Nichols is a farmer who grows grain.  Doc. 102-1 at 5 (Kaser Dep. 19:7–11); Doc. 102-2 at 8 (Nichols Dep. 32:19–23).  He owns a semi-truck and employs drivers to transport his grain in a semi-truck he owns.  Doc. 98-2 at 4, 5 (Nichols Dep. 28:5–24, 29:11–22); Doc. 102-1 at 5 (Kaser Dep. 17:3–17).  Mr. Nichols inspects his semi-trucks semi-annually, once before wheat harvest and again before fall harvest.  Doc. 102-2 at 8 (Nichols Dep. 32:6–18).  He trains his drivers how to inspect the semi-truck's tires.  *Id.* at 14 (Nichols Dep. 56:2–4).  Mr. Nichols instructs the drivers to

> walk around [the tires] with your foot and kick them and listen to them. You can tell whether they're . . . flat, or low, or . . . if they're tight, or we also have . . . used a hammer, tapped them on the side.  They have another tool . . . I bought John [Kaser] one that was a tire thumper.

*Id.* (Nichols Dep. 56:5–12).  A "thumper," Mr. Nichols explained, is a tool with a "wooden handle with a piece of metal on the end of it[.]"  *Id.* (Nichols Dep. 56:13–19).  And, Mr. Nichols testified, thumping a tire wouldn't provide a valid measurement of the tire's inflation.  *Id.* (Nichols Dep. 67:2–16).  Mr. Nichols also testified that "tires have a come a long way since your great-grandfather's day when kicking [the tires] actually told you something."  *Id.* at 17 (Nichols Dep. 66:15–25).

Mr. Nichols has a set of stationary scales on his farm to weigh semi-trucks loaded for transportation.  *Id.* at 10 (Nichols Dep. 37:19–38:2).  Loaded semi-trucks drive from the field— un-weighed—to the farm scale.  *Id.* at 13 (Nichols Dep. 49:1–4, 16–22).  Only then are the loads weighed.  *Id.*  Mr. Nichols didn't purchase a portable scale to weigh the loads in the field because of the expense to purchase one.  *Id.* (Nichols Dep. 49:24–50:23).

***Mr. Kaser***

Mr. Kaser works for Mr. Nichols as a semi-truck driver, transporting grain to grain elevators. Doc. 102-1 at 5 (Kaser Dep. 17:3–17). Mr. Kaser has six years of experience driving semi-trucks. *Id.* at 9 (Kaser Dep. 34:4–6). He holds a commercial driver's license (CDL) and attended driving school and passed a test to earn his CDL. *Id.* at 8 (Kaser Dep. 32:6–21). Mr. Kaser testified that it takes more skill and knowledge to drive a semi-truck safely than it does to drive a car. *Id.* at 11 (Kaser Dep. 43:3–5). He testified that semi-truck drivers must be alert and careful to drive as safely as other drivers on the road because semi-trucks can cause more damage. *Id.* (Kaser Dep. 43:3–12).

Mr. Kaser testified that he performs a pre-trip inspection of each semi-truck he drives before he starts driving for day. *Id.* at 10 (Kaser Dep. 37:12–15). Mr. Kaser testified that "tires have come a long way since your great grandpa's day when kicking [the tires] actually told you something" about them. *Id.* (Kaser Dep. 38:22–39:2). Yet, during his pre-trip inspections, Mr. Kaser checked the tires to determine if they needed air by kicking and "thumping" the tires with a thumper that Mr. Nichols purchased for him. Doc. 98-3 at 7 (Kaser Dep. 81:4–14). Mr. Kaser testified that when a tire is underinflated, it builds up heat which weakens the tire's body cords. *Id.* at 4 (Kaser Dep. 39:13–19). Mr. Kaser also agreed that underinflation causes excessive heat build-up and internal structural damage that can lead to tire failure. *Id.* at 5 (Kaser Dep. 58:9–13). He testified that the weight limit for semi-trucks was an important rule and that it is wrong to exceed it. Doc. 102-1 at 13 (Kaser Dep. 50:16–51:13). Mr. Kaser testified that failing to follow the weight-limit rule needlessly puts the public in danger, shows disregard for the safety of others, and is reckless. *Id.* at 12–13 (Kaser Dep. 51:15–53:4). He testified that semi-trucks can breakdown, have brake failures, and have tire blow-outs if they're overweight. *Id.* at 12 (Kaser Dep. 50:1–14).

***Semi-Truck***

On December 23, 2019—the day of the accident—Mr. Kaser drove a 1988 Peterbilt semi-truck, pulling a 1989 Timpte grain trailer. *Id.* at 8 (Kaser Dep. 30:7–13). The trailer was registered with the State of Kansas and assigned a permanent trailer license plate. Doc. 98-2 at 9 (Nichols Dep. 90:7–16); Doc. 98-6 (Registration Receipt). The semi-truck previously had been driven overloaded, exceeding the weight limit by 10,000 pounds (on multiple occasions) and by almost 14,000 pounds on another. Doc. 102-1 at 15 (Kaser Dep. 57:19–58:7). Mr. Kaser testified that a used tire was installed on the trailer and that this tire had the blow-out on the day of the accident. Doc. 98-3 at 3 (Kaser Dep. 31:6–32:4); Doc. 102-1 at 7 (Kaser Dep. 25:12–26:9).[4] Mr. Kaser didn't know whether the tire had been abused, overloaded or repaired. Indeed, he didn't know anything about its history. Doc. 102-1 at 7 (Kaser Dep. 26:14–25). Mr. Nichols also testified that one can't know what the history of a used tire is and that's why it's not a good idea to put them on a semi-truck. Doc. 102-2 at 15–16 (Nichols Dep. 60:12–61:13).

On the morning of December 23, the semi-truck Mr. Kaser was driving wasn't overloaded. He testified it weighed under the legal limit. Doc. 102-1 at 23 (Kaser Dep. 89:3–14). Mr. Kaser inspected the semi-truck before beginning his trip, but he also testified that he could've missed something during his pre-trip inspection. *Id.* at 11, 20–21 (Kaser Dep. 42:12–16, 80:23–81:3). He checked the tires' inflation by thumping the tires. Doc. 98-3 at 7 (Kaser Dep. 81:4–20). He also checked the tire tread. *Id.* (Kaser Dep. 83:24–84:4). Mr. Kaser noted that the tire which experienced the blow-out had at least 4/32 inch of tread depth, no tread

---

[4]       Mr. Kaser offers conflicting testimony on this point. He also testified that he didn't know whether the tire that experienced the blow-out was new or used. Doc. 98-3 at 6 (Kaser Dep. 77:14–78:13). And Mr. Nichols maintains that the tires were new, not used. Doc. 102-2 at 18 (Nichols Dep. 69:1–21). The court adopts the version of these events most favorable to plaintiff to analyze defendants' summary judgment motion and thus accepts the testimony that a used tire was installed on the trailer on the day of the accident. *See Scott*, 550 U.S. at 378–80.

separation, and there was nothing visually wrong with it before the trip.  *Id.* (Kaser Dep. 83:24–84:21).  He also noted that the blow-out tire didn't have any foreign objects in it, except for gravel.  *Id.* (Kaser Dep. 83:15–23).  The tire wasn't underinflated, overinflated, cracked, bulging, or gushing air from a cut.  *Id.* (Kaser Dep. 83:1–14).  During his morning inspection, Mr. Kaser didn't notice that the trailer he drove on the day of the accident didn't have a license plate attached to it.  Doc. 102-1 at 8, 20 (Kaser Dep. 30:24–31:5, 79:21–80:18).  Likewise, Mr. Nichols didn't know that the trailer lacked a license plate attached to it.  *Id.*; Doc. 102-2 at 13 (Nichols Dep. 51:3–5).

### *Post-Collision*

On December 23, while Mr. Kaser was transporting a load of Mr. Nichols's wheat, a tire on the trailer Mr. Kaser was driving experienced a blow-out.  Doc. 102-1 at 15, 24 (Kaser Dep. 60:4–7, 96:2–6); Doc. 102-2 at 15 (Nichols Dep. 57:25–58:6).  The blow-out emitted smoke and left bits of tire, plywood, and aluminum debris on the highway.  Doc. 102-1 at 17 (Kaser Dep. 65:22–66:3); Doc. 96-2 at 17 (Bailey Dep. 68:20–69:9).  Mr. Kaser admitted that after the blow-out, the tire that failed wasn't in a "safe condition."  Doc. 102-1 at 17 (Kaser Dep. 68:11–24).  Yet, Mr. Kaser testified that he "kept on trucking" towards his destination, a grain elevator.  *Id.* He didn't go back to the place where the tire had the blow-out to remove the plywood and aluminum debris from the road.  *Id.* at 16, 17 (Kaser Dep. 61:9–10, 67:1–7).  Once Mr. Kaser stopped and inspected his semi-truck, he noticed part of the underside of the trailer was missing.  He also saw damaged plywood and an aluminum crossbar on the underside of the trailer.  *Id.* (Kaser Dep. 64:13–25).

With these facts governing the summary judgment analysis, the court now turns to Mr. Kaser and Mr. Nichols's arguments that the court should grant them summary judgment against

plaintiff's request for punitive damages.  The court then turns to plaintiff's theory that Mr. Kaser

is negligent per se because he drove a trailer without a license plate.

**B.      Punitive Damages[5]**

Plaintiff argues that Mr. Kaser and Mr. Nichols's acts warrant punitive damages.

Plaintiff reasons that Mr. Kaser acted recklessly, wantonly, or with disregard for the safety of

others because Mr. Kaser improperly inspected his semi-truck and trailer, operated the semi-

truck and trailer with the tire in an unsafe, illegal, and dangerous condition causing the blow-out

and contributing to the crash.  Doc. 94 at 16 (Pretrial Order ¶ 4.a.i.).  Plaintiff imputes Mr.

Kaser's allegedly wanton behavior to his employer, Mr. Nichols.  Plaintiff reasons that Mr.

Nichols is vicariously liable for Mr. Kaser's allegedly wanton conduct because Mr. Nichols

approved of—*i.e.*, ratified—Mr. Kaser's actions.  *Id.* (Pretrial Order ¶ 4.a.ii.).

Mr. Kaser and Mr. Nichols disagree.  They argue that the summary judgment facts can't

support a punitive damages award.  They ask the court to grant summary judgment against

plaintiff's request for such an award.  Doc. 97; Doc. 98.  Defendants first argue that plaintiff's

request for punitive damages against Mr. Kaser fails because the evidence, even when viewed in

the light most favorable to plaintiff, can't support a clear and convincing finding that Mr. Kaser

acted wantonly.  Defendants also argue that even if Mr. Kaser acted wantonly, plaintiff's request

for punitive damages against Mr. Nichols fails because plaintiff hasn't adduced any facts

---

[5]      Kansas law governs the claims asserted in this diversity action.  *See* Doc. 94 at 1, 2 (Pretrial
Order ¶ 1.a., 1.d.) (invoking court's diversity subject matter jurisdiction and agreeing—subject to the
court's own conclusion—that Kansas law governs the case).  In a diversity case, like this one, the court
applies the substantive law of the forum state, including its choice of law rules.  *Emp'rs Mut. Cas. Co. v.
Bartile Roofs, Inc.*, 618 F.3d 1153, 1170 (10th Cir. 2010) (citation omitted).  Kansas courts follow the
rule of *lex loci delicti* for tort claims, applying the substantive law of the place where a tort occurred.
*Anderson v. Com. Constr. Servs., Inc.*, 531 F.3d 1190, 1193–96 (10th Cir. 2008); *Ling v. Jan's Liquors*,
703 P.2d 731, 735 (Kan. 1985).  Here, the allegations giving rise to plaintiff's claims purportedly
occurred in Kansas—*i.e.*, the place where Mr. Kaser's tire failed and Mr. Zimmerman subsequently rear-
ended plaintiff's vehicle.

permitting a reasonable factfinder to find or infer that Mr. Nichols ratified Mr. Kaser's acts or omissions.

The vicarious liability theory against Mr. Nichols turns on whether plaintiff has adduced sufficient facts for a reasonable factfinder to find or infer that Mr. Kaser acted wantonly.  So, the court begins its analysis with Mr. Kaser, then turns to Mr. Nichols.

### 1.    Mr. Kaser's Direct Liability for Punitive Damages

Mr. Kaser and Mr. Nichols assert that no reasonable factfinder could find or infer that Mr. Kaser acted recklessly, wantonly, or with disregard for the safety of others.  So, according to Mr. Kaser and Mr. Nichols, plaintiff fails to adduce facts which could carry her burden to submit a request for punitive damages to the jury.  And thus, her request fails as a matter of law. Plaintiff disagrees.  In her view, whether Mr. Kaser acted wantonly is a triable question of fact.

"In any civil action where claims for . . . punitive damages are included, the plaintiff shall have the burden of proving, by clear and convincing evidence in the initial phase of the trial, that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice." Kan. Stat. Ann. § 60-3701(c).  Clear and convincing evidence "is an intermediate standard of proof between a preponderance of the evidence and beyond a reasonable doubt."  *In re B.D.-Y.*, 187 P.3d 594, 598 (Kan. 2008).  Clear and convincing evidence must "establish that the truth of the facts asserted is 'highly probable.'"  *Id.* at 601.  "[E]vidence should be 'clear' in the sense that it is certain, plain to the understanding, and unambiguous, and 'satisfactory' in the sense that it is so believable that people of ordinary intelligence, discretion, and caution may have confidence in it."  *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 827 P.2d 24, 32 (Kan. 1992).

"To establish wanton conduct, a plaintiff must make a two-pronged showing:  (1) that the act was 'performed with a realization of the imminence of danger'; and (2) that the act was performed with 'a reckless disregard [of] or complete indifference to the probable consequences

12

of the act.'" *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244 (10th Cir. 2009) (quoting *Reeves v. Carlson*, 969 P.2d 252, 256 (Kan. 1998)).

Since 1986, if not before, binding authority requires federal district courts—even at the summary judgment stage—to "view the evidence presented through the prism of the substantive evidentiary burden" that will apply at trial. *Liberty Lobby*, 477 U.S. at 254. In *Liberty Lobby*, the D.C. Circuit had held that the "heightened evidentiary requirement" governing some libel cases doesn't apply at summary judgment. 477 U.S. at 247. The Supreme Court reversed. It concluded that the standard applied at summary judgment mirrors the standard applied at the directed verdict stage. *Id.* at 254. So, when "the clear-and-convincing standard" will apply at trial, this same "standard of proof should be taken into account in ruling on summary judgment motions[.]" *Id.* at 255. Thus, in a libel case governed by the clear and convincing standard, "the appropriate summary judgment question will [ask] whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that plaintiff has not." *Id.* at 255–56.

Sharpening the point, our Circuit has held that *Liberty Lobby* applies to diversity cases where Kansas state law requires proof by clear and convincing evidence. *Milne v. USA Cycling, Inc.*, 575 F.3d 1120, 1127–28 (10th Cir. 2009) (citing *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187 (10th Cir. 2002)). This is so even though Kansas state court authority permits a plaintiff to survive summary judgment under the preponderance standard. *Id.* at 1128.

Below, the court applies this clear and convincing standard to each element required for a finding of wanton conduct. The analysis begins by asking whether a reasonable jury could find that defendant Kaser realized (or knew) the imminence of danger his acts or omissions created. *Reeves*, 969 P.2d at 256.

### a.       Knowledge of Imminent Danger

Plaintiff asserts that defendant Kaser acted wantonly, recklessly, or with indifference towards the safety of others because he admitted to knowing that the trailer's tires were damaged and dangerous to drive on.  Doc. 94 at 2–4, 16 (Pretrial Order ¶¶ 3.a.I.A., 4.a.i.).  Mr. Kaser and Mr. Nichols dispute that Mr. Kaser knew about the safety concerns of damaged tires on the date of the accident.

The first element to establish wantonness asks whether defendant realized the imminence of danger.  *Reeves*, 969 P.2d at 256.  To satisfy this requirement, plaintiff must adduce facts which would permit a reasonable inference or finding that "based on defendants' knowledge of existing conditions, they were aware that their action or inaction 'would likely or probably result' in the injury or other known risk or complication."  *D.M. ex rel Morgan v. Wesley Med. Ctr., LLC*, 487 F. Supp. 3d 1071, 1078 (D. Kan. 2020) (first quoting *Holt v. Wesley Med. Ctr., LLC.*, No. 00-1318-JAR, 2004 WL 1636574, at *8 (D. Kan. July 19, 2004); then citing *Reeves*, 969 P.2d at 256–57).

Defendant Kaser testified that he knew that the semi-truck and trailer were overloaded regularly, and that overloading tires causes heat build-up and internal structural damage.  This, he admitted, can lead to tire failure.  Doc. 98-3 at 5 (Kaser Dep. 58:9–13); Doc. 102-1 at 15 (Kaser Dep. 57:19–58:7).  Mr. Kaser also testified that underinflated tires can cause similar damage.  Doc. 98-3 at 4 (Kaser Dep. 39:13–19).  Defendants Kaser and Nichols concede that Mr. Kaser made these statements during the deposition, but they argue that these statements only relate to Mr. Kaser's knowledge on April 10, 2023, the date when his deposition was taken, and not on December 23, 2019, the date of the accident.  Doc. 104 at 4–6, 8.  They argue that plaintiff offers no evidence that Mr. Kaser knew the facts he testified to before his deposition or on December 23, 2019—the date of the accident.  *Id.*

14

Plaintiff also introduced evidence that Mr. Kaser regularly inspects the semi-truck's tires. Doc. 102-1 at 10 (Kaser Dep. 37:12–15). Indeed, Mr. Kaser testified that he checked the semi-truck's tires the morning of December 23, 2019, noting their condition and tread width. *Id.* at 20–21 (Kaser Dep. 80:23–81:3); Doc. 102-1 at 7 (Kaser Dep. 83:1–84:21). Mr. Kaser also testified that he has six years of experience driving semi-trucks. Doc. 98-3 at 9 (Kaser Dep. 34:4–6). Mr. Kaser testified that he holds a CDL, and that he went to driving school and passed a test to earn his CDL. *Id.* at 8 (Kaser Dep. 32:6–21).

Defendant Kaser's deposition testimony aside, plaintiff offers other additional evidence that could permit a clear and convincing finding or inference that on December 23, 2019, Mr. Kaser knew that driving on damaged tires—whether from overloading, underinflating, or previous use—creates a dangerous situation. Mr. Kaser's deposition testimony about his knowledge of tire safety alone would not satisfy plaintiff's burden to establish knowledge of imminent danger before the accident. But when viewed in the light most favorable to plaintiff, the totality of plaintiff's evidence—driving experience, CDL license, driving school, testimony about pre-trip checking tires—could permit a clear and convincing finding or inference that Mr. Kaser knew that tire conditions (overloaded, underinflated, used vs. new) were important to protect his safety and the safety of others on the road. And it could permit a finding that failing to maintain safe tires would cause danger to himself and others. Plaintiff thus shoulders her burden to adduce facts permitting a clear and convincing finding or inference that Mr. Kaser "realized the imminence of danger." *Reeves*, 969 P.2d at 256.

Mr. Kaser and Mr. Nichols's first summary judgment argument fails. Plaintiff has adduced evidence to support a finding on the first prong of wantonness. She has come forward with facts permitting a finding of knowledge of imminent danger. The court thus continues with

the second wantonness element.  It asks:  Did Mr. Kaser act with reckless disregard for the safety of others in light of realizing imminent danger?

### b.   Reckless Disregard of Imminence of Danger

Plaintiff argues that four facts, together, permit reasonable basis for a clear and convincing inference that Mr. Kaser recklessly disregarded the danger of his semi-truck's tires. They are:  (1) overloading the trailer; (2) using used tires; (3) ineffectively inspecting the tires; and (4) violating other driving laws.

The second element to establish wantonness asks whether defendant recklessly or indifferently disregarded the dangerous consequences of his actions.  *Reeves*, 969 P.2d at 256; *see also* Pattern Inst. Kan. Civil 103.03 (defining wanton conduct as "doing something knowing that it is dangerous, and either being completely indifferent to the danger or recklessly disregarding the danger"); *see also* Pattern Inst. Kan. Civil 171.44 Comments (collecting cases which permitted plaintiff to seek punitive damages when defendant recklessly disregarded or was indifferent to the rights of others).  "To constitute wantonness, the acts complained of must show not simply lack of due care, but that the actor must be deemed to have realized the imminence of injury to others from his acts and to have refrained from taking steps to prevent the injury because [the actor was] indifferent to whether it occurred or not."  *Allman v. Bird*, 353 P.2d 216, 220 (Kan. 1960) (quoting *Frazier v. Cities Serv. Oil Co.*, 157 P.2d 822, 823 (Kan. 1945)).  Under Kansas law,

> [i]n order for a plaintiff to prove wanton conduct, it is not necessary that the plaintiff's evidence establish a formal and direct intention to injure any particular person.  It is sufficient if the defendant evinced that degree of indifference to the rights of others which may justly be characterized as reckless.
>
> Recklessness is a stronger term than negligence.  To be reckless, conduct must be such as to show disregard of or indifference to consequences, under

circumstances involving danger to life or safety of others. *Mathes v. Robinson*, 205 Kan. 402, 406, 469 P.2d 259 (1970).

*Reeves*, 969 P.2d at 256.

The court now applies this legal standard to the four facts which, plaintiff asserts, permit a reasonable factfinder to find (or infer) that Mr. Kaser recklessly disregarded his actions' danger to others.

### i.        Overloading the Trailer

Plaintiff argues that defendant Kaser's trailer was overloaded, exceeding the weight limit multiple times, which damaged the semi-truck's tires. Mr. Kaser conceded that the trailer repeatedly exceeded its weight limits. Doc. 102-1 at 15 (Kaser Dep. 57:19–22). Mr. Kaser testified that the trailer sometimes was overloaded by over 10,000 pounds and even 14,000 pounds on one occasion. *Id.* (Kaser Dep. 57:24–58:7). Mr. Kaser and Mr. Nichols respond that the semi-truck wasn't overloaded on the day of the accident. *Id.* at 23 (Kaser Dep. 89:3–13). Plaintiff doesn't controvert this fact but maintains her position, nonetheless. Plaintiff reasons that even if the trailer wasn't overloaded on the day of the accident, the tire could've burst because of previous overloading, which compromised the tire's integrity from excessive heat build-up and internal damage.

### ii.        Using Used Tires

Plaintiff asserts that defendant Kaser's trailer had used tires installed on it and that he didn't know whether the tire at issue had "been abused, overloaded, [or] repaired[.]" Doc. 102 at 15. Plaintiff relies on Mr. Kaser's testimony that the trailer had used tires. Doc. 98-3 at 3 (Kaser Dep. 31:6–32:4); Doc. 102-1 at 7 (Kaser Dep. 25:12–26:9). She reasons that used tires are more dangerous than new tires because the second owner doesn't know how the first owner treated the tires—*i.e.*, did the first owner damage the tire's integrity by overloading or underinflating. *See*

17

Doc. 102-2 at 15–16 (Nichols Dep. 60:12–61:13).  But Mr. Kaser and Mr. Nichols reject

plaintiff's argument.  They rely on Mr. Nichols's testimony that the tires were new, not used, and

Mr. Kaser's testimony that he wasn't sure if the tires were new or used.  Doc. 98-3 at 6 (Kaser

Dep. 77:14–78:13); Doc. 102-2 at 18 (Nichols Dep. 69:1–21).  For the court's analysis at

summary judgment, the court resolves the conflicting facts by adopting the evidence in the light

most favorable to plaintiff.  The court thus assumes that the tires were used.  *See Scott*, 550 U.S.

at 378–80.

### iii. Ineffectively Inspecting the Tires

Plaintiff argues that Mr. Kaser ineffectively inspected the trailer's tires before the trip,

resulting in underinflated tires and causing a blow-out.  Mr. Kaser testified that he inspected the

semi-truck and trailer, pre-trip.  Doc. 102-1 at 20–21 (Kaser Dep. 80:23–81:3).  Mr. Kaser

explained that he used a tire-thumper to "thump the tires or kick them with [his] foot" to check

their inflation.  *Id.* at 10, 21 (Kaser Dep. 37:16–18, 38:14–16, 81:4–8).  Mr. Kaser explained the

process:  "hit [the thumper] on the tire. . . . Just listen to see if it needs more air or if it's good—

good and aired up."  *Id.* at 21 (Kaser Dep. 81:9–20).  If a tire needs more air, "the sound is a lot

softer than what it's supposed to be."  *Id.* (Kaser Dep. 81:21–82:1).  Mr. Kaser also testified that

he could've missed something during his pre-trip inspection of the tires on the day of the

accident.  *Id.* at 11 (Kaser Dep. 42:12–16).  Mr. Kaser and Mr. Nichols don't dispute Mr. Kaser's

deposition testimony.

### iv. Violating Other Driving Laws

Plaintiff argues that defendant Kaser's other allegedly illegal acts—driving without a

license plate, not removing debris from the highway, and continuing to drive after the blow-

out—permit an inference that Mr. Kaser recklessly disregarded safety and safety rules.  The

18

court identifies each state law plaintiff invokes to show Mr. Kaser violated Kansas law.  It also

recites the facts which plaintiff relies on to bolster her argument that Mr. Kaser violated that law.

To begin, Kan. Stat. Ann. § 8-142 provides that "It shall be unlawful for any person

to . . . operate, or for the owner thereof knowingly to permit the operation, upon a highway of

any vehicle . . . which does not have attached thereto and displayed thereon the license plate or

plates assigned thereto[.]"  Mr. Kaser conceded that the tailer he pulled didn't have a license

plate.  Doc. 102-1 at 24 (Kaser Dep. 95:17–19).

Next, Kan. Stat. Ann. § 8-1583 provides that:

> No person shall throw or deposit upon any highway any . . . substance likely
> to injure any person, animal or vehicle upon such highway.  [And] [a]ny
> person who drops, or permits to be dropped or thrown, upon any highway
> any destructive or injurious material shall immediately remove the same or
> cause it to be removed.

Mr. Kaser testified that there was plywood and aluminum on the road from his semi-truck and

trailer after his tire sustained the blow-out.  Doc. 102-1 at 17 (Kaser Dep. 65:22–66:3).  He

testified that he neither returned to the blow-out site, nor removed the plywood or aluminum

debris from the roadway.  *Id.* at 16 (Kaser Dep. 61:9–10).

Finally, Kan. Stat. Ann. § 8-1742(e) provides that it "is unlawful for any person to

operate a motor vehicle or combination of vehicles having one or more tires in an unsafe

condition."  Mr. Kaser testified that after the blow-out, the affected tire was in an unsafe

condition.  *Id.* at 17 (Kaser Dep. 68:7–15).  Yet, Mr. Kaser concedes, he continued driving on the

tire toward his destination:  "I had six other tires I could go on to [Highway] 24 make it to the

elevator."  *Id.* (Kaser Dep. 68:17–24).

Plaintiff doesn't assert that any of these statutory violations creates its own cause of action.  Instead, plaintiff contends these facts support her claim that Mr. Kaser acted with reckless indifference to safety and safety protocol.

While it's a reasonably close call, the court agrees with plaintiff.  Plaintiff's version of the facts, if credited by a factfinder, could permit a reasonable jury to find, by clear and convincing evidence, that Mr. Kaser acted with "reckless disregard and indifference" to the probable consequences of his actions when he:  (1) drove on tires which previously were operated while overloaded; (2) drove on used tires; (3) checked tire pressure by kicking or "thumping" the tires; and (4) violated other driving laws (operating without a license plate, left debris on the highway, and drove on an unsafe blown-out tire).  *Cerretti v. Flint Hills Rural Elec. Coop Ass'n*, 837 P.2d 330, 334 (Kan. 1992) ("Acts of omission as well as acts of commission can be wanton since reckless disregard and indifference are characterized by failure to act when action is called for to prevent injury.").  Mr. Kaser and Mr. Nichols's second summary judgment argument also fails.[6]

### c.    Summary

To conclude, plaintiff has adduced sufficient facts to create a genuine, triable issue of fact whether Mr. Kaser acted wantonly.  Plaintiff survives summary judgment on her request for punitive damages against Mr. Kaser.  The court next turns to the vicarious liability issue.  That

---

[6]    The court views this as a reasonably close call because plaintiff doesn't ever come forward with evidence suggesting a causal connection between the alleged traffic law violations and the injury sustained by plaintiff here.  For at least one of those violations, it's evident there's no such connection: the absence of a license plate didn't cause the trailer's tire to fail.  But perhaps plaintiff can admit the license plate evidence as part of a broader pattern of indifference to traffic laws.  That issue isn't joined on the current briefs and the court declines to decide it now.  But the issue illustrates the kind of uncertainly that leads the court to decide that it shouldn't grant summary judgment on this question now.

is, has plaintiff adduced facts permitting a finding that defendant Nichols is vicariously liable for Mr. Kaser's allegedly wanton acts?

### 2.      Mr. Nichols's Vicarious Liability

Plaintiff requests to recover punitive damages from Mr. Nichols, too.  She asserts that defendant Nichols, as Mr. Kaser's employer, is vicariously liable for Mr. Kaser's allegedly wanton conduct because Mr. Nichols ratified Mr. Kaser's wanton actions, as outlined in the previous section.  Defendants Kaser and Nichols maintain that Mr. Nichols isn't vicariously liable because no reasonable factfinder could find from plaintiff's adduced evidence that Mr. Nichols ratified Mr. Kaser's wanton acts.

Kansas law provides that a plaintiff can't recover punitive damages against an "employer for the acts of an . . . employee unless the questioned conduct was authorized or ratified by a person expressly empowered to do so on behalf of the . . . employer."  Kan. Stat. Ann. § 60-3702(d)(1); *see also Beggerly v. Walker*, 397 P.2d 395, 399 (Kan. 1964) ("[A] master is not liable for a tortious act committed by his servant . . . unless the act be done by authority of the master, either express or implied, or unless the act be done by the servant in the course or within the scope of his employment.").  An employer can ratify an employee's conduct either expressly or impliedly, before, during, or after the employee's questioned conduct.  *Smith*, 866 P.2d at 1003.  Employers impliedly authorize or ratify an employee's conduct by engaging in "a course of conduct indicating the approval, sanctioning, or confirmation of the questioned conduct."  *Id.*

At this stage, plaintiff must establish that she's adduced evidence which could permit a reasonable factfinder to find that Mr. Nichols ratified Mr. Kaser's conduct.  To recover punitive damages from defendant Nichols, Kan. Stat. Ann. § 60-3702(c) burdens plaintiff with an additional showing.  That is, she must establish two things.  *First*, she must show by clear and convincing evidence that Mr. Kaser engaged in conduct capable of supporting an award of

punitive damages.  And *second*, if plaintiff makes the first showing, she must adduce evidence capable of supporting a finding that Mr. Nichols ratified Mr. Kaser's conduct.

Plaintiff here asserts that Mr. Nichols impliedly authorized Mr. Kaser to use the ineffective "thumping" technique to measure tire inflation—an act that is plaintiff asserts causally connected to the damages plaintiff sustained from the tire failure and subsequent collision.  Mr. Nichols testified that thumping doesn't provide a valid measure of the tire's inflation.  Doc. 102-2 at 17 (Nichols Dep. 67:2–16).  And Mr. Nichols testified that underinflated tires can build heat and fail.  *Id.* (Nichols Dep. 67:18–23).  Mr. Nichols also testified that he trained employees to inspect tires by

> [w]alk[ing] around [the tires] with your foot and kick them and listen to them. . . . [W]e also have . . . used a hammer, tapped them on the side.  They have another tool. . . . I bought John [Kaser] one that was a tire thumper.

*Id.* at 14 (Nichols Dep. 56:2–12).

The court agrees with plaintiff.  Plaintiff's facts, if accredited by a jury, could permit a reasonable finding that Mr. Nichols engaged in "a course of conduct indicating the approval, sanctioning, or confirmation of the questioned conduct."  *Smith*, 866 P.2d at 1003.  Here, under plaintiff's theory of her claim and her version of the facts, the questioned conduct is driving on dangerous tires—specifically, underinflated tires.  A reasonable factfinder could find that Mr. Nichols impliedly authorized Mr. Kaser to inspect tire inflation by thumping them because Mr. Nichols supplied Mr. Kaser a thumper and trained his drivers to use the thumping or kicking method.  *Id.* at 14 (Nichols Dep. 56:2–12).  A reasonable factfinder also could find or infer that the thumping method yields inaccurate results about the tire's inflation from Mr. Nichols's testimony that thumping doesn't provide a valid measure of what the inflation of the tires was.  *Id.* at 17 (Nichols Dep. 67:2–17).  And likewise, a reasonable factfinder could find or infer that

Mr. Nichols authorized Mr. Kaser to drive on dangerous tires when Mr. Nichols authorized Mr. Kaser to use an inaccurate method to check tire inflation.  Plaintiff's request to recover punitive damages from Mr. Nichols thus survives summary judgment.  The court now turns to Mr. Kaser and Mr. Nichols's motion for summary judgment on plaintiff's theory that Mr. Kaser is negligent per se because he drove without a license plate.

### C.      Negligence Per Se

Plaintiff's negligence claim against defendant Kaser asserts, among other things, that Mr. Kaser drove a semi-truck and trailer without a license plate, violating Kan. Stat. Ann. § 8-133.[7] Defendants Kaser and Nichols seek summary judgment against this theory.[8]  They argue that no reasonable juror could find or infer from plaintiff's adduced evidence that the tire on Mr. Kaser's trailer failed because the trailer didn't have a license plate attached to it.

"The elements of negligence per se are:  (1) A violation of a statute, ordinance or regulation, and (2) the violation must be the cause of the damages resulting therefrom."  *OMI Holdings, Inc. v. Howell*, 918 P.2d 1274, 1296 (Kan. 1996) (citation and internal quotation marks omitted).  "'In addition, the plaintiff must also establish that an individual right of action for

---

[7]      Plaintiff doesn't explicitly argue that Mr. Kaser is negligent per se because he violated Kan. Stat. Ann. § 8-133.  Instead, in the Pretrial Order, plaintiff asserts a

> negligence  per  se  .  .  .  claim  against  John  Kaser  for  improper  inspection  and operating  the  semi  with  the  tire  in  an  unsafe,  illegal  and  dangerous  condition causing the blow-out and contributing to the crash and illegally without a license plate.

Doc. 94 at 16 (Pretrial Order ¶ 4.a.i.).  The court construes plaintiff's claim to mean that plaintiff asserts that Mr. Kaser was negligent per se because he drove "illegally without a license plate." *Id.*

[8]      Defendants Kaser and Nichols don't ask the court to exclude the evidence on which this theory rests.  *See* Doc. 98 at 14–15; Doc. 102 at 17.  Instead, Mr. Kaser and Mr. Nichols merely ask the court to foreclose one avenue for plaintiff to argue negligence per se:  that Mr. Kaser is negligent per se because he drove without a license plate.

injury arising out of the violation was intended by the legislature.'" *Pullen v. West*, 92 P.3d 584, 593 (Kan. 2004) (quoting *Cullip*, 972 P.2d at 782).

> Liability in damages cannot be predicated on a violation of a statute unless the breach of the law is the proximate cause of the injury or damages, or substantially contributes thereto.  A connection must be established between the violation proved and the damage or injury occasioned.
>
> The proximate cause of an injury is that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces injury and without which injury would not have occurred, the injury being the natural and probable consequence of the wrongful act.  Ordinarily, questions of negligence, including proximate cause, are questions of fact to be resolved by the trier of fact.  However, where all the evidence relied upon by a party is undisputed and susceptible of only one inference, the question of proximate cause becomes a question of law.

*Cullip*, 972 P.2d at 782 (internal citations omitted).

The court applies each element of the negligence per se standard to the summary judgment facts, viewed in the light most favorable to plaintiff.  The court begins with whether Mr. Kaser violated Kan. Stat. Ann. § 8-133.

### 1.      Violation of Statute

Kan. Stat. Ann. § 8-133(a) provides that the "license plate assigned to the vehicle shall be attached to the rear of the vehicle and shall be displayed during the current registration year or years."  Defendants Kaser and Nichols concede that Mr. Kaser's trailer didn't have a license plate affixed to it on the day of the accident. Doc. 102-1 at 8 (Kaser Dep. 30:24–31:5); Doc. 102-2 at 13 (Nichols Dep. 50:24–51:2).  So, the trailer's condition on the day of the wreck violated this statute.  Mr. Kaser and Mr. Nichols's first negligence per se argument fails.  The court turns to the second negligence per se element, which asks:  Did the statutory violation cause plaintiff's alleged damages?

### 2.      Cause of Injury

"The fact that a party violates a safety statute or rule will not make him liable for damages on the basis of negligence per se unless the violation is the proximate cause of the injury." *Plains Transp. of Kan., Inc. v. Baldwin*, 535 P.2d 865, 871 (Kan. 1975).  "Proximate cause is most always a question for the jury.  It becomes a question of law only where the facts are agreed upon and not in dispute." *Kendrick v. Atchison, T. & S. F. R. Co.*, 320 P.2d 1061, 1072 (Kan. 1958).  Here, the material facts aren't in dispute.  Plaintiff identifies no facts which could permit a reasonable factfinder to find that the absence of a license plate on the trailer caused plaintiff's injuries.  In the Pretrial Order, plaintiff maintains that her injuries stem from the blow-out of the tire and a subsequent collision with Mr. Zimmerman's semi-truck.  Doc. 94 at 8–9 (Pretrial Order ¶ 3.a.II.).  And in her summary judgment briefing, plaintiff never argues that the missing license plate proximately caused the tire to burst.

The court thus grants summary judgment to defendants Kaser and Nichols against plaintiff's theory that Mr. Kaser was negligent per se because he didn't have a license plate on his vehicle.

Having resolved defendant Kaser and Nichols's motion for summary judgment (Doc. 97), the court turns next to defendants Zimmerman and Hanchett's joint motion for summary judgment.  Doc. 95.

## IV.      Defendant Zimmerman and Hanchett's Summary Judgment Motion (Doc. 95)

Before addressing these defendants' legal arguments, the court first recounts additional undisputed facts specific to Mr. Zimmerman and Mr. Hanchett's motion for summary judgment.

A.     **Background**

*Mr. Hanchett*

Defendant Hanchett is the managing member of Hanchett Farms.  Doc. 96-4 at 4 (Hanchett Dep. 14:2–4).  About two years before the accident, Mr. Hanchett hired defendant Zimmerman to drive semi-trucks.  *Id.* at 13 (Hanchett Dep. 52:14–17).  Mr. Hanchett testified that before hiring Mr. Zimmerman, he had observed Mr. Zimmerman for years as he drove a semi-truck by Hanchett Farms.  *Id.* at 14 (Hanchett Dep. 54:12–55:11).  To investigate Mr. Zimmerman's ability to drive a semi-truck safely, Mr. Hanchett testified that he watched Mr. Zimmerman haul short loads in the country, checked his ability to drive a semi-truck safely, and ultimately felt comfortable with him driving for Hanchett Farms.  *Id.* at 13–14 (Hanchett Dep. 52:24–53:5).

*Mr. Zimmerman*

Mr. Zimmerman has 30 years of experience driving semi-trucks.  Doc. 96-3 at 6 (Zimmerman Dep. 21:6–8).  Mr. Zimmerman has had no vehicle crashes, traffic tickets, traffic warnings, or federal motor carrier safety regulation violations while driving a semi-truck.  *Id.* at 32 (Zimmerman Dep. 127:6–12).  He holds a CDL, went to driving school, and passed a test to earn his license.  *Id.* at 16 (Zimmerman Dep. 61:19–62:2).  Mr. Zimmerman agreed that commercial drivers should know the safe driving information in the CDL manual.  *Id.* at 9 (Zimmerman Dep. 33:1–7).  Mr. Zimmerman couldn't qualify for a Department of Transportation medical card, due to having a "lazy eye."  *Id.* at 18 (Zimmerman Dep. 71:22–72:3).  But he maintains that his eye doesn't affect his driving or impair his ability to see.  *Id.* at 22 (Zimmerman Dep. 88:20–22).

Mr. Zimmerman acknowledged that semi-trucks require more skill to drive safely than a car:  they're bigger, heavier, and require more time and space to change lanes, slow down, or

stop. *Id.* at 7, 8, 38 (Zimmerman Dep. 28:3–15, 29:6–20, 149:11–16). So, it's important for semi-truck drivers to follow other vehicles at a safe distance to provide adequate time to stop. *Id.* at 12 (Zimmerman Dep. 47:6–25). Indeed, following another vehicle too closely can cause deadly crashes. *Id.* (Zimmerman Dep. 47:6–48:4). Mr. Zimmerman agreed with the statement that following a vehicle too closely needlessly puts people in danger and shows disregard for the safety of others. *Id.* (Zimmerman Dep. 48:12–16).

Mr. Zimmerman also acknowledged that, generally, steering to avoid an emergency is safer than trying to stop before you reach the hazard. *Id.* at 15 (Zimmerman Dep. 57:6–14). That's because a semi-truck can almost always turn to miss an obstacle faster than it can come to a stop. *Id.* (Zimmerman Dep. 58:6–11). Mr. Zimmerman testified that evasive steering, when done correctly, is generally safe and that the shoulder of the road is one place a semi-truck driver could steer to avoid a collision. *Id.* at 15, 17 (Zimmerman Dep. 59:9–14, 68:6–11). He agreed with the statement that "turning your truck is the best evasive maneuver." *Id.* at 15 (Zimmerman Dep. 58:20–25). It reduces the chance of an accident and even if it doesn't avoid an accident, reduces its severity. *Id.* (Zimmerman Dep. 58:13–18). While an evasive steering maneuver is usually safer than a collision, it's not danger-free. Mr. Zimmerman testified that loaded semi-trucks sometimes will wreck or roll over when they swerve onto the shoulder. *Id.* at 27 (Zimmerman Dep. 107:22–108:1).

### *Collision*

On December 23, 2019, Mr. Zimmerman drove a semi-truck and trailer weighing—together—about 84,600 pounds. Doc. 96-4 at 7 (Hanchett Dep. 25:16–26:2). Mr. Zimmerman testified that under CDL safety guidelines, he should've had 300 to 325 feet of distance between his vehicle and plaintiff's car. Doc. 96-3 at 21 (Zimmerman Dep. 81:14–22). After Ms. Bailey passed Mr. Zimmerman, there was 200 to 300 yards between her vehicle and his. Doc. 96-2 at

19 (Bailey Dep. 73:23–74:11).  Mr. Zimmerman testified that he was just starting to get up to the speed limit—about 65 miles per hour—when the tire on Mr. Kaser's trailer failed.  Doc. 96-3 at 20 (Zimmerman Dep. 77:15–23).  At this point, only 50 yards (or 150 feet) separated Ms. Bailey's car from Mr. Zimmerman's semi-truck.  *Id.* (Zimmerman Dep. 78:11–79:17).  As soon as Mr. Zimmerman saw the blow-out, he started slowing down.  *Id.* at 21 (Zimmerman Dep. 84:13–24).  Mr. Zimmerman testified that he was able to slow down as fast as the semi-truck would slow down, but the semi-truck can only slow down quickly when it's loaded and headed downhill.  *Id.*  Mr. Zimmerman braked, instead of implementing evasive steering techniques, such as pulling onto the shoulder.  *Id.* at 21–22 (Zimmerman Dep. 84:25–85:2).  Mr. Zimmerman testified that if he'd had more time and space, he could've reacted by stopping, slowing, or swerving—responses he couldn't take within 150 feet.  *Id.* at 21, 31 (Zimmerman Dep. 81:10–82:10, 124:16–21).  Mr. Zimmerman conceded that he was too close to plaintiff's car when the tire failed.  *Id.* at 21 (Zimmerman Dep. 81:24–82:4).

Mr. Zimmerman testified that he didn't steer into the grassy highway shoulder, and thus avoid the collision, because he feared that maneuver would cause his semi-truck to wreck or roll. *Id.* at 27 (Zimmerman Dep. 107:22–108:1).  Mr. Zimmerman conceded that he could've avoided the collision if he had swerved onto the shoulder.  *Id.* at 24 (Zimmerman Dep. 96:9–15).  When asked whether—given the choice between putting plaintiff's vehicle danger by colliding with it and putting himself in danger by swerving—Mr. Zimmerman testified that he made the conscious choice to rear-end plaintiff's vehicle instead of swerving and risk rolling his semi-truck.  *Id.* at 27 (Zimmerman Dep. 108:8–18).

### *Post Collision*

Mr. Zimmerman testified that after the collision, he continued until he came to a stop.  *Id.* at 26 (Zimmerman Dep. 103:12–24).  He had to keep driving around plaintiff's car a bit to keep

from hitting plaintiff's vehicle a second time.  *Id.*  Mr. Zimmerman acknowledged that he was required to see if people are injured and secure or provide assistance. *Id.* at 27 (Zimmerman Dep. 106:16–22).  He testified that after the collision, there already was someone assisting those in plaintiff's vehicle, so he stayed back out of the way.  *Id.* (Zimmerman Dep. 106:16–107:4).  About 15 to 20 minutes later, police officers arrived at the scene.  *Id.* (Zimmerman Dep. 106:8– 15).  Mr. Zimmerman filled out the paperwork the police officers gave him while sitting inside his semi-truck.  *Id.*  Sometime later, he approached plaintiff's vehicle and spoke with one of its occupants. *Id.* at 26 (Zimmerman Dep. 104:21–23).  Ms. Bailey testified that Mr. Zimmerman "was yelling" and used "multiple swear words," including "the F word a lot."  Doc. 96-2 at 28 (Bailey Dep. 110:13–25).

After the collision, Mr. Hanchett continued to employ Mr. Zimmerman to drive semi-trucks for Hanchett Farms.  Doc. 96-3 at 5 (Zimmerman Dep. 19:22–20:6).  Mr. Hanchett testified that, as applied to the collision at issue here, there was nothing that Mr. Zimmerman did wrong or should have done differently.  Doc. 96-4 at 9 (Hanchett Dep. 36:12–15).

With these facts in mind, the court turns to Mr. Zimmerman and Mr. Hanchett's arguments that they deserve summary judgment on certain issues.  Specifically, they ask for summary judgment in their favor against:  (1) plaintiff's request for punitive damages; and (2) plaintiff's theory that Mr. Zimmerman is negligent per se because he didn't immediately render assistance to plaintiff following the collision.

### B.    Punitive Damages

Plaintiff argues that Mr. Zimmerman and Mr. Hanchett's actions warrant punitive damages.  Plaintiff reasons that Mr. Zimmerman acted recklessly, wantonly, or with disregard for the safety of others because Mr. Zimmerman allegedly followed plaintiff's vehicle too closely, drove at an unsafe speed, and tried to avoid the collision by braking instead of swerving.

Plaintiff imputes Mr. Zimmerman's allegedly wanton conduct to his employer, Mr. Hanchett. Plaintiff reasons that Mr. Hanchett is vicariously liable because Mr. Hanchett:  (1) hired Zimmerman even though he had a "lazy eye"; and (2) ratified Mr. Zimmerman's allegedly wanton conduct.  Mr. Zimmerman and Mr. Hanchett disagree.

They first argue that plaintiff's request for punitive damages against Mr. Zimmerman fails because plaintiff hasn't adduced clear and convincing evidence capable of supporting a finding that Mr. Zimmerman acted wantonly.  Mr. Hanchett's arguments build on Mr. Zimmerman's.  He argues, first, that plaintiff hasn't adduced evidence to support an award of punitive damages against Mr. Zimmerman.  Second, and even if plaintiff has established a triable punitive damages claim against Mr. Zimmerman, Mr. Hanchett contends that he's still entitled to summary judgment on the punitive claim against him.  That's so, defendants argue, because plaintiff didn't preserve her theory that Mr. Hanchett ratified Mr. Zimmerman's conduct in the Pretrial Order, thus forfeiting the argument.  Below, the court begins its punitive damages analysis with Mr. Zimmerman.  It then turns to punitive analysis for Mr. Hanchett.

### 1.    Mr. Zimmerman's Direct Liability for Punitive Damages

Defendants Zimmerman and Hanchett assert that no reasonable factfinder could find by clear and convincing evidence that Mr. Zimmerman acted recklessly, wantonly, or with disregard for the safety of others.  So, according to Mr. Zimmerman and Mr. Hanchett, plaintiff's request for punitive damages fails as a matter of law.  Plaintiff disagrees.  Whether Mr. Zimmerman acted wantonly, plaintiff asserts, turns on disputed material facts that require a trial to resolve.

The same law applied to plaintiff's punitive claim against Mr. Kaser also applies here. *See supra* at 12–13.  The court examines each element of that analysis, below, beginning with the question whether Mr. Zimmerman realized "the imminence of danger" his actions created. *Reeves*, 969 P2.d at 256.

### a.    Knowledge of Imminent Danger

Plaintiff asserts that Mr. Zimmerman acted wantonly, recklessly, or with indifference for the safety of others because he knew that the following acts create dangerous situations:  (1) following a vehicle too closely; (2) driving at an unreasonable speed for the circumstances; and (3) braking, instead of swerving, to avoid collision with plaintiff's vehicle .

Mr. Zimmerman testified that semi-trucks require more skill to drive safely than a car: they're bigger, heavier, and require more time and space to change lanes, slow down, or stop. Doc. 96-3 at 7, 8, 12, 38 (Zimmerman Dep. 28:3–15, 29:6–20, 47:6–25, 149:11–16).  Given these attributes, Mr. Zimmerman testified it's important for semi-trucks to follow other vehicles at a safe distance.  *Id.* at 12 (Zimmerman Dep. 47:6–25).  He also testified that following too close could lead to injury.  *Id.* (Zimmerman Dep. 47:6–48:4).  Mr. Zimmerman acknowledged generally that steering to avoid an emergency is safer than trying to stop before you reach the hazard.  *Id.* at 15 (Zimmerman Dep. 57:6–14).  But he also explained that loaded semi-trucks sometimes will wreck or roll over when they swerve onto the shoulder.  *Id.* at 27 (Zimmerman Dep. 107:22–108:1).  Mr. Zimmerman has 30 years experience driving a semi-truck.  *Id.* at 6 (Zimmerman Dep. 21:6–8).  Mr. Zimmerman holds a CDL and has been tested on safe driving techniques.  *Id.* at 16 (Zimmerman Dep. 61:19–62:2).

A factfinder could find or infer from the totality of plaintiff's evidence—deposition testimony, driving experience, CDL license, driving school—that Mr. Zimmerman realized the dangers of following a vehicle too closely, driving too fast, and breaking, instead of swerving to avoid collision.  The first element prong of the punitive damages standard thus disfavors granting summary judgment for Mr. Zimmerman and Mr. Hanchett.  The analysis continues with the second prong:  whether Mr. Zimmerman acted with reckless disregard for the safety of others, in

light of his knowledge that it's dangerous to follow too close, drive too fast, and brake instead of swerving.

### b.    Reckless Disregard of Imminence of Danger

Plaintiff contends that Mr. Zimmerman's testimony (along with the other summary judgment facts) permits a clear and convincing finding or inference that Mr. Zimmerman recklessly disregarded the dangers of driving too fast, following too close, and braking instead of swerving because he did each of those things.  Plaintiff relies on three main pieces of evidence to support her claim that Mr. Zimmerman engaged in these actions:  (1) the distance and speed at which Mr. Zimmerman followed plaintiff's vehicle; (2) Mr. Zimmerman's decision to brake, rather than swerve onto the shoulder; and (3) Mr. Zimmerman's post-accident actions.  The same law applied to plaintiff's punitive claim against Mr. Kaser also applies here.

### i.    Following Distance & Speed

Plaintiff's arguments begin by noting that Mr. Zimmerman drove his semi-truck too fast and too close to plaintiff's vehicle.  Had Mr. Zimmerman driven at a slower speed and greater distance, plaintiff reasons, he would've had time and space to slow down and avoid hitting plaintiff's vehicle.  Mr. Zimmerman concedes that he likely could've avoided hitting plaintiff's vehicle if he had more space.  *Id.* at 21, 31 (Zimmerman Dep. 81:10–82:10, 124:16–21).  He testified that 300 feet is a safe distance to follow other vehicles.  *Id.* at 21 (Zimmerman Dep. 81:14–22).  Before Ms. Bailey swerved, Mr. Zimmerman followed plaintiff's vehicle at a distance of 200 to 300 yards.  Doc. 96-2 at 19 (Bailey Dep. 73:23–74:11).  And Mr. Zimmerman testified that he was only about 50 yards behind Ms. Bailey's car right before the accident.  Doc. 96-3 at 20 (Zimmerman Dep. 78:11–79:17).

But defendants Zimmerman and Hanchett contest that the facts—even when viewed in plaintiff's favor—permit a finding that Mr. Zimmerman acted with reckless indifference for the

safety of others.  They argue that Mr. Zimmerman acted safely, given all the circumstances.

Defendants emphasize that the accident occurred after Ms. Bailey passed Mr. Zimmerman's

semi-truck, then she decreased speed and swerved.  *Id.* at 18, 19 (Bailey Dep. 69:20–70:6,

74:24–76:2).  After Mr. Zimmerman turned east onto US-24 Highway, he accelerated, trying to

get up to speed.  Doc. 96-3 at 20 (Zimmerman Dep. 77:16–23).  But his semi-truck is heavy and

accelerates slowly.  *Id.* at 21 (Zimmerman Dep. 84:17–24); Doc. 96-4 at 7 (Hanchett Dep.

25:16–26:2).  So, Ms. Bailey passed Mr. Zimmerman—leaving just some 150 feet of space

between her car and his semi-truck.  Doc. 96-3 at 31 (Zimmerman Dep. 123:18–21).  Shortly

after Ms. Bailey passed Mr. Zimmerman, Mr. Kaser's tire failed on the trailer ahead of her.  Ms.

Bailey testified that she let off her car's brakes, decreasing her speed to 45 miles per hour, and

swerved.  Doc. 96-2 at 18, 19 (Bailey Dep. 69:20–70:6, 74:24–76:2).  Mr. Zimmerman testified

he responded by braking as fast as he could.  Doc. 96-3 at 21 (Zimmerman Dep. 84:13–24).

Under Kansas law, "speed alone is not sufficient to establish gross and wanton

negligence[.]"  *Perry v. Schmitt*, 339 P.2d 36, 40 (Kan. 1959).  Instead, speed "is properly

considered along with other facts and circumstances surrounding the occasion in determining

whether defendant was guilty of wantonness."  *Id.*  And Kan. Stat. Ann. § 8-1523(a) provides

that the "driver of a motor vehicle shall not follow another vehicle more closely than is

reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and

the condition of the highway."  "While the statute does not specify what is considered

'reasonable and prudent,' the Tenth Circuit has noted the statute compels a judgment based on

speed, conditions, and pertinent traffic."  *United States v. McColley*, No. 19-CR-40109-TC, 2021

WL 3276423, at *3 (D. Kan. July 30, 2021) (citing *United States v. Vercher*, 358 F.3d 1257,

1260–62 (10th Cir. 2004) (upholding an officer's determination that defendant followed too

closely based on the car length test)).  The "Tenth Circuit has also concluded that an officer's use of the 2-second rule provided a minimum level of objective justification required for reasonable suspicion justifying a traffic stop." *State v. Moore*, 154 P.3d 1, 7 (Kan. 2007) (citation and internal quotation marks omitted).

Here, and while it's close, the court cannot conclude on the summary judgment record, that plaintiff has failed to adduce enough facts to withstand summary judgment on her punitive claim.  Saying it another way, the evidence adduced so far, provides enough evidence for a reasonable jury to find, by clear and convincing evidence, that Mr. Zimmerman acted with "a reckless disregard or complete indifference" to the consequences of his actions when he followed plaintiff's vehicle by fewer than 300 feet.  *Reeves*, 969 P.2d at 256; Kan. Stat. Ann. § 60-3701(c); Doc. 96-3 at 21 (Zimmerman Dep. 81:14–22).  Kansas law forecloses a finding of wantonness on speed alone.  *Perry*, 339 P.2d at 40.  But Mr. Zimmerman's testimony that he should've followed plaintiff's vehicle by 300 feet to be safe, that he followed plaintiff's vehicle by just 150 feet, and that he could've avoided the accident if he had more space could permit a clear and convincing finding that Mr. Zimmerman recklessly disregarded the consequences of his actions.  *Id.* at 21, 31 (Zimmerman Dep. 81:10–82:10, 124:16–21).

A final note:  Though the court applies the same standard at this stage as it will at the close of plaintiff's evidence—viewing the evidence in the light most favorable to plaintiff, giving her the benefit of all reasonable inferences—the parties shouldn't over-interpret the current ruling.  Of necessity, the court draws this conclusion on a relatively abstract summary judgment record.  The evidence at trial may illuminate the factual setting more fully, placing the totality of all circumstances in sharper contrast than it does now.  Those circumstances, if they develop, could produce a different conclusion.

### ii.        Braking Instead of Evasive Steering

Next, plaintiff argues that Mr. Zimmerman acted with reckless disregard or indifference to the danger of his actions because he consciously decided to hit plaintiff's car instead of swerving onto the mowed, grassy shoulder of the highway and avoid striking it.  Mr. Zimmerman concedes that he made a conscious choice to hit plaintiff's vehicle instead of attempting to swerve onto the shoulder and risk rolling his semi-truck.  Doc. 96-3 at 27 (Zimmerman Dep. 107:22–108:15).  But Mr. Zimmerman and Mr. Hanchett argue that this testimony is a misleading excerpt from a broader factual context—one which demonstrates that Mr. Zimmerman acted with safety and care.

For starters, defendants conclude that Mr. Zimmerman only testified that he made a conscious decision to hit plaintiff's vehicle in response to plaintiff's leading question.  They rely on the broader context of Mr. Zimmerman's deposition testimony:

> Q:  And so are you telling me you made a choice between putting people—those people in danger and putting yourself in danger to crash into their vehicle, whatever the result of that was, versus putting yourself danger by swerving?
>
> A:  Yes.
>
> Q:  You made that conscious choice?
>
> A:  Yes.
>
> Q:  And you decided to put them in danger; right?
>
> A:  Well, they was causing the danger.

Doc. 96-3 at 27 (Zimmerman Dep. 108:8–21) (objections omitted).  Defendants Zimmerman and Hanchett assert that plaintiff's question required Mr. Zimmerman to choose between two irreconcilable outcomes:  harm to others or harm to himself.  In this light, Mr. Zimmerman and Mr. Hanchett argue, Mr. Zimmerman's admission merely testified to self-preservation.

Next, Mr. Zimmerman and Mr. Hanchett argue that Mr. Zimmerman's decision to brake, instead of swerve, doesn't demonstrate indifference to the safety of others. "Where Kansas courts have dealt with the term 'evasive action,' the term has been understood consistent with its plain meaning." *City of Lawrence v. Gilmore*, No. 108,527, 2013 WL 3970195, at *6, 304 P.3d 363 (Kan. Ct. App. Aug. 2, 2013) (collecting cases). "In these cases, 'evasive action' means action taken in order to avoid a collision with a person, vehicle, animal, structure, or object." *Id.* This includes both braking and turning the steering wheel. *Id.* Here, Mr. Zimmerman testified that he didn't swerve because he was afraid that his semi-truck would roll over and wreck. Doc. 96-3 at 27 (Zimmerman Dep. 107:22–108:1). So, Mr. Zimmerman tried to avoid collision by braking, instead. Mr. Zimmerman and Mr. Hanchett argue that no reasonable juror could clearly and convincingly find that Mr. Zimmerman acted with reckless disregard for or indifference to the danger his actions posed to others when he tried to brake, instead of swerve and risk rolling his semi-truck.

Again, it's a close call, but the court sides with plaintiff at this stage. The summary judgment facts could allow a reasonable factfinder to find or infer that Mr. Zimmerman acted with reckless disregard. His testimony that he made a conscious choice to hit plaintiff's vehicle instead of attempting to swerve onto the shoulder and risk rolling his semi-truck could permit such a finding—though it may not represent the finding the court would make, were it the factfinder. Doc. 96-3 at 27 (Zimmerman Dep. 107:22–108:15). Mr. Zimmerman's testimony that he chose to brake instead of swerve, if credited, may offer an explanation why he made certain decisions. But it doesn't directly contradict his testimony that he made the conscious choice to hit plaintiff's vehicle and, even if it did, plaintiff gets the more favorable view of the question at this stage.

###       iii.              Mr. Zimmerman's Post-Accident Behavior

Lastly, plaintiff cites Mr. Zimmerman's post-accident behavior to bolster her argument that Mr. Zimmerman acted with disregard for the danger his actions posed to others. Plaintiff argues that Kan. Stat. Ann. § 8-1604 required Mr. Zimmerman to return to the scene of the accident and check on plaintiff, and Mr. Zimmerman's failure to do so shows indifference. Plaintiff also cites Mr. Zimmerman's use of profane language. The court addresses both post-accident behaviors, beginning first with Mr. Zimmerman's allegedly profane language then turning to Kan. Stat. Ann. § 8-1604.

Plaintiff argues that Mr. Zimmerman repeatedly used profane language after the accident. Ms. Bailey testified that following the accident, Mr. Zimmerman used "multiple swear words." Doc. 101-2 at 28 (Bailey Dep. 110:10–25). Mr. Zimmerman doesn't deny this testimony about his actions. Instead, he and Mr. Hanchett instead argue that it's irrelevant to the broader wantonness determination. Plaintiff offers no statute or caselaw suggesting that profane language indicates a disregard for the safety of others. The court agrees with defendants. That Mr. Zimmerman used profane language after the accident doesn't, by itself, suggest that he violated the statute. Nothing in the governing statute permits such a finding.

Next, plaintiff argues that Mr. Zimmerman failed to aid plaintiff immediately after the accident. Plaintiff argues that this summary judgment fact supports her argument that Mr. Zimmerman acted with complete indifference to danger. Doc. 101 at 22; *see Gray v. Conner Indus., Inc.*, No. 20-1037-TC-GEB, 2021 WL 5298667, at *4 (D. Kan. Nov. 15, 2021) (finding evidence about defendant's "conduct following the accident on the issue of punitive damages . . . probative of the [defendant's] state of mind at the time of the accident."). Plaintiff argues her evidence shows that, after the accident, Mr. Zimmerman "continued down the road for a distance

followed by [plaintiff's] vehicle." Doc. 94 at 7 (Pretrial Order ¶ 3.a.I.B). She asserts that Mr.

Zimmerman delayed checking on plaintiff and others in the car, violating Kan. Stat. Ann. § 8-

1604.

Kan. Stat. Ann. § 8-1604(a)(2) provides:

> The driver of any vehicle involved in an accident resulting in injury to or
> death of any person, or damage to any attended vehicle or property . . .
> insofar as possible, shall immediately make efforts to determine whether
> any person involved in such accident was injured or killed, and shall render
> to any person injured in such accident reasonable assistance, including the
> carrying, or the making of arrangements for the carrying of such person to
> a physician, surgeon or hospital for medical or surgical treatment if it is
> apparent that such treatment is necessary, or if such carrying is requested
> by the injured person.

Mr. Zimmerman testified that he did not go help plaintiff immediately after the accident.

Doc. 96-3 at 27 (Zimmerman Dep. 106:16–107:4). Plaintiff asserts that this admission

demonstrates reckless indifference to the safety of others. Defendants view things differently, of

course. They argue that Mr. Zimmerman "stayed back out of the way" because there "was

another guy already assisting them." *Id.* Mr. Zimmerman testified that, after the accident, he

pulled over, spoke with police officers, and eventually spoke with an occupant of plaintiff's

vehicle. Doc. 96-3 at 26, 27 (Zimmerman Dep. 104:21–23, 106:8–107:4); *see also* Doc. 96-2 at

28 (Bailey Dep. 110:10–25).

Viewing the competing descriptions in the light most favorable to plaintiff, a reasonable

factfinder might find or infer that Mr. Zimmerman's conduct manifested reckless disregard for

danger. Specifically, he testified that he did not go help plaintiff immediately after the accident.

Doc. 96-3 at 27 (Zimmerman Dep. 106:16–107:4). Mr. Zimmerman's testimony that he didn't

approach plaintiff because someone else was already helping her, if credited, may lead the

factfinder to a different finding. But it doesn't permit just one reasonable finding. And so, the

court declines the request to enter summary judgment against the theory that defendant

Zimmerman violated § 8-1604.

>        **c.        Summary**

To conclude, the collection of evidence on which plaintiff relies to support her argument

that Mr. Zimmerman acted wantonly (following distance and speed; decision to brake; post-

accident actions), when taken together, permit a clear and convincing finding or inference that

Mr. Zimmerman recklessly disregarded the safety of others.  The court thus denies summary

judgment for Mr. Zimmerman on plaintiff's request for punitive damages against Mr.

Zimmerman.

The court now turns to plaintiff's request for punitive damages against Mr. Hanchett.

Naturally, plaintiff's request for punitive damages against Mr. Hanchett necessarily relies on

plaintiff's ability to adduce facts from which a reasonable factfinder could find or infer that Mr.

Zimmerman acted wantonly.

>     **2.        Mr. Hanchett's Vicarious Liability**

Plaintiff also requests punitive damages against Mr. Hanchett.  She asserts that Mr.

Hanchett, as Mr. Zimmerman's employer, is vicariously liable for Mr. Zimmerman's allegedly

wanton conduct because Mr. Hanchett permitted Mr. Zimmerman to drive his semi-truck with a

"lazy eye."  And Mr. Hanchett allegedly ratified Mr. Zimmerman's allegedly wanton actions—

driving too close, too fast, and braking instead of swerving—by approving of Mr. Zimmerman's

decisions and continuing to employ him after the collision.

Defendants Hanchett and Zimmerman counter plaintiff's argument, asserting that

plaintiff's theory of vicarious liability against Mr. Hanchett fails for three reasons.  *First*,

plaintiff has adduced no facts which permit an inference that Mr. Zimmerman's eye impairs his

vision or that he needs a DOT medical card.  *Second*, Mr. Zimmerman didn't act wantonly, so

Mr. Hanchett can't be vicariously liable for Mr. Zimmerman's nonexistent wanton conduct.  And *third*, even if Mr. Zimmerman acted wantonly, plaintiff hasn't "preserved a claim or theory of ratification in the pretrial order."  Doc. 103 at 15.  So, defendants reason, plaintiff's theory that Mr. Hanchett is vicariously liable because he ratified Mr. Zimmerman's allegedly wanton conduct "is simply not before the Court."  *Id.*

### a.    Employing Mr. Zimmerman with His "Lazy Eye"

First, plaintiff argues that Mr. Hanchett is vicariously liable for Mr. Zimmerman's allegedly wanton acts because Mr. Hanchett hired Mr. Zimmerman to drive semi-trucks when Mr. Zimmerman has a "lazy eye."  Mr. Zimmerman testified that he believes he is ineligible for a DOT medical card because of his lazy eye.  Doc. 96-3 at 18 (Zimmerman Dep. 71:22–72:3).  Mr. Zimmerman and Mr. Hanchett credit this testimony but maintain that Mr. Zimmerman's lazy eye doesn't impair his ability to see or drive semi-trucks.  *Id.* at 22 (Zimmerman Dep. 88:20–22).

The court agrees with Mr. Zimmerman and Mr. Hanchett.  Plaintiff has introduced no facts which, if credited, could permit a finding or inference that Mr. Zimmerman's lazy eye affects his vision.  Plaintiff also has failed to introduce any facts which, if credited, would permit a finding or inference that Mr. Zimmerman needs a DOT medical card, and his failure to secure one indicates recklessness.  Instead, the summary judgment facts viewed in plaintiff's favor permit a finding or inference that Mr. Hanchett made sure Mr. Zimmerman could safely drive a semi-truck before hiring him.  The only evidence in the summary judgment record on this subject is that Mr. Zimmerman has a condition he described as a "lazy eye."  But plaintiff hasn't come forward with any evidence explaining what, in a medical sense, this description means.  Nor has plaintiff adduced evidence that this "lazy eye" impairs Mr. Zimmerman's vision or—even if it does—that such impairment caused (or contributed to the cause of) the actions purportedly

supporting a punitive finding.  Nor has plaintiff adduced evidence that Mr. Zimmerman should have secured a DOT medical card.

Instead, plaintiff simply has evidence of a lay person's description of a condition and, based on that description, she will invite the jury to speculate about the condition and its contribution to the conduct at issue.  Plaintiff's approach doesn't comport with Kansas law. Kansas law explicitly imposes a duty on plaintiff to prove—by clear and convincing evidence— that Mr. Hanchett acted willfully, wantonly, or maliciously toward plaintiff.  Kan. Stat. Ann. § 60-3701(c).  As it must, the court views the summary judgment "evidence presented through the prism of the substantive evidentiary burden" that it will apply at trial.  *Liberty Lobby*, 477 US at 254.  The court concludes no reasonable jury could find by clear and convincing evidence that Mr. Hanchett acted willfully, wantonly, or maliciously toward plaintiff.  The court thus grants summary judgment and rules that plaintiff should recover no punitive damages based on defendant Hanchett's decision to employ Mr. Zimmerman with his "lazy eye."[9]

### b.    Ratifying Mr. Zimmerman's Conduct

Next, plaintiff argues that defendant Hanchett is vicariously liable for Mr. Zimmerman's wanton acts because he ratified Mr. Zimmerman's behavior.  Plaintiff reasons that Mr. Hanchett approved of Mr. Zimmerman's actions on the day of the accident and continued to employ him as a semi-truck driver after it.  In response, defendants Zimmerman and Hanchett first argue that Mr. Hanchett can't be vicariously liable for Mr. Zimmerman's allegedly wanton conduct because

---

[9]    The court has its doubts whether this particular conduct is properly analyzed as vicarious liability. Instead, plaintiff appears to seek punitive damages against Mr. Hanchett because he hired Mr. Zimmerman to drive a semi-truck and knew he had a lazy eye.  *See* Doc. 94 at 5 (Pretrial Order 3.a.I.B.). This contention focuses on Mr. Hanchett's purported wrongdoing—not Mr. Zimmerman's wrongdoing that is attributed to Mr. Hanchett by vicarious liability.  But the parties argue this issue as a vicarious liability theory, and the court thus adopts their convention.  *Id.*; Doc. 96 at 26–27; Doc. 101 at 5–6, 22– 24.

Mr. Zimmerman didn't act wantonly. They also argue that plaintiff failed to preserve a theory of ratification in the Pretrial Order. Defendants Zimmerman and Hanchett make no arguments that Mr. Hanchett didn't ratify Mr. Zimmerman's conduct.

Kan. Stat. Ann. § 360-3702(d)(1) provides that an employer shall not be liable for punitive damages "for the acts of an agent or employee unless the questioned conduct was authorized or ratified by a person expressly empowered to do so on behalf of the principal or employer[.]" In *Smith v. Printup*, the Kansas Supreme Court interpreted "ratified" in Kan. Stat. Ann. § 60-3702(d)(1). 866 P.2d at 1003. It held that an employer may ratify his employee's acts through "express or implied conduct, . . . before, during, or after the employee's questioned conduct." *Id.* An employer may impliedly ratify his employee's acts by "indicating the approval, sanctioning, or confirmation of the [employee's] questioned conduct." *Id.* And if an employer "acquir[es] knowledge of the unauthorized act of an [employee], the [employer] should promptly repudiate the act, otherwise it will be presumed he has ratified and affirmed the act." *Theis v. duPont, Glore Forgan Inc.*, 510 P.2d 1212, 1213 (Kan. 1973).

The court agrees with defendants Zimmerman and Hanchett. Plaintiff's contentions in the Pretrial Order "are not a model of clarity[.]" Doc. 96 at 27; *see supra* note 1, at 2. But, defendants are mistaken when they assert that "there is clearly a complete absence of any contention" in the Pretrial Order "that [Mr.] Hanchett authorized or ratified [Mr.] Zimmerman's conduct related to the accident[.]" *Id.* Plaintiff contends that "at the time of the crash alleged in this case, Mr. Zimmerman was . . . operating a semi-truck owned by Dale Hanchett, *with Mr. Hanchett's approval, in the course and scope of his employment with Hanchett Farms*[.]" Doc. 94 at 6 (Pretrial Order 3.a.I.B.) (emphasis added). Plaintiff also contends that Mr. Hanchett's "acts and/or omissions"—along with Mr. Zimmerman and Hanchett Farms's acts and/or

omissions—are "negligent, negligent per se, and/or reckless, wanton and/or show disregard for the safety of others." *Id.* at 7.

While plaintiff doesn't specifically assert that Mr. Hanchett "ratified" Mr. Zimmerman's conduct, she sufficiently introduces a theory of ratification to preserve the issue for trial, and, thus, at summary judgment.  In the Pretrial Order, plaintiff asserts that Mr. Hanchett "approved" Mr. Zimmerman to drive Mr. Hanchett's semi-truck on the date of the accident "in the course and scope of [Mr. Zimmerman's] employment" with defendant Hanchett.  Through this contention, plaintiff alleges that Mr. Hanchett "approv[ed], sanction[ed], or confirm[ed]"— impliedly ratified—Mr. Zimmerman's conduct.  *Smith*, 866 P.2d at 1003.  Plaintiff thus adequately preserved a theory of ratification, even without specifically invoking the word "ratified."  So, defendant Zimmerman and Hanchett's argument that plaintiff "in no way asserted or preserved a claim or theory of ratification in the pretrial order" fails.  Doc. 103 at 15.

Defendants Zimmerman and Hanchett's sole defense to plaintiff's theory of ratification rests on the argument that plaintiff didn't preserve the theory in the Pretrial Order.  Given the court's conclusion that plaintiff adequately preserved the theory of ratification in the Pretrial Order, and that defendants Zimmerman and Hanchett make no other argument against the ratification argument, the court denies defendants Zimmerman and Hanchett's motion for summary judgment on plaintiff's request for punitive damages against Mr. Hanchett.

The court now turns to Mr. Zimmerman and Mr. Hanchett's motion for summary judgment on plaintiff's theory that Mr. Zimmerman is negligent per se because he didn't stop and aid plaintiff soon enough after the accident.

## C.    Negligence Per Se

Plaintiff's negligence claim against Mr. Zimmerman includes the negligence per se theory that Mr. Zimmerman didn't stop soon enough after the accident and render assistance to

plaintiff, violating Kan. Stat. Ann. §§ 8-1602(a) and 8-1604.[10]  Mr. Zimmerman and Mr. Hanchett ask the court to grant summary judgment against this theory of liability.  They argue that no reasonable juror could find from the summary judgment facts that Mr. Zimmerman's alleged failure to stop and render assistance after the accident caused Mr. Zimmerman to collide with plaintiff's vehicle.[11]

The court applies the same legal standard as it applied to the negligence per se theory of claims asserted against defendants Kaser and Nichols, above.  That is, the court first considers whether Mr. Zimmerman violated a statute, then, whether that violation caused plaintiff's damages.  *OMI Holdings, Inc.*, 918 P.2d at 1296.  The court begins with whether Mr. Zimmerman violated Kan. Stat. Ann. §§ 8-1602(a) or 8-1604.

### 1.     Violation of Statute

Plaintiff argues that Mr. Zimmerman is negligent per se because he violated Kan. Stat. Ann. §§ 8-1604 and 8-1602(a) when, after the collision, Mr. Zimmerman didn't immediately stop and check on plaintiff.  Mr. Zimmerman and Mr. Hanchett argue that whether Mr. Zimmerman violated Kan. Stat. Ann. §§ 8-1604 and 8-1602(a) presents a disputed factual issue that the jury must resolve.

---

[10]     Plaintiff doesn't explicitly argue that Mr. Zimmerman is negligent per se for failing to stop after the collision and render assistance.  In the Pretrial Order, plaintiff alleges that Mr. Zimmerman violated Kan. Stat. Ann. §§ 8-1604 and 8-1602 and concludes that the "above acts and/or omissions by Mr. Zimmerman . . . violate the standard of care, the above Kansas statutes and are negligent, negligent per se, and/or reckless, wanton and/or show disregard for the safety of others." Doc. 94 at 7 (Pretrial Order. ¶ 3.a.I.B.).  The court construes this argument to mean that plaintiff brings a negligence per se claim against Mr. Zimmerman for violating Kan. Stat. Ann. §§ 8-1604 and 8-1602.

[11]     Plaintiff, Mr. Zimmerman, and Mr. Hanchett don't argue that the court should exclude the evidence on which this theory rests.  *See* Doc. 96 at 29-30; Doc. 101 at 22.  Mr. Zimmerman and Mr. Hanchett just ask the court to foreclose one avenue of plaintiff's negligence per se theory of liability:  that Mr. Zimmerman is negligent per se because he failed to stop and render plaintiff assistance immediately.

First, the court already has concluded that plaintiff successfully adduced facts which permit a finding or inference that Mr. Zimmerman violated § 8-1604 when it analyzed plaintiff's punitive damages request against Mr. Zimmerman. *See Supra* at 37–39  So, there's no need to repeat that analysis here.

Next, Kan. Stat. Ann. § 8-1602(a) provides that:

> The driver of any vehicle involved in an accident resulting in injury to, great bodily harm to or death of any person or damage to any attended vehicle or property shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible, but shall then immediately return to and in every event shall remain at the scene of the accident until the driver has fulfilled the requirements of K.S.A. 8-1604, and amendments thereto.

Plaintiff argues that after the accident, Mr. Zimmerman "continued down the road for a distance followed by [plaintiff's] vehicle." Doc. 94 at 7 (Pretrial Order ¶ 3.a.I.B). Mr. Zimmerman testified that he didn't immediately assist plaintiff following the accident. Doc. 96-3 at 27 (Zimmerman Dep. 106:16–107:4). But plaintiff offers no facts which permit a finding that Mr. Zimmerman delayed stopping after the collision, and instead, continued driving. Doc. 101 at 3, 11, 22. Indeed, the only evidence on this subject established that Mr. Zimmerman pulled over after the collision, taking just enough time for him to slow down and come to a stop. Doc. 96-3 at 26 (Zimmerman Dep. 103:12–24). No reasonable factfinder could find or infer that Mr. Zimmerman violated Kan. Stat. Ann. § 8-1602(a) by leaving the scene of the accident.

In sum, plaintiff doesn't meet her burden to adduce facts which could permit a reasonable factfinder to find or infer that Mr. Zimmerman violated Kan. Stat. Ann. § 8-1602(a). But she has met her burden to adduce facts which could permit a reasonable factfinder to find or infer that Mr. Zimmerman violated Kan. Stat. Ann. § 8-1604. So, the court continues to the second step of the negligence per se analysis. That is, did defendant Zimmerman's violation of Kan. Stat. Ann. § 8-1604 cause plaintiff's injuries?

45

## 2.    Cause of Damages

"The fact that a party violates a safety statute or rule will not make him liable for damages on the basis of negligence per se unless the violation is the proximate cause of the injury." *Plains Transp.*, 535 P.2d at 871. Plaintiff identifies no facts which could permit a reasonable factfinder to find or infer that Mr. Zimmerman's failure to stop and render timely assistance caused plaintiff's injuries. In the Pretrial Order, plaintiff maintains that her injuries stem from Mr. Zimmerman's semi-truck read-ending her vehicle. Doc. 94 at 8–9 (Pretrial Order ¶ 3.a.II.). Plaintiff never argues that Mr. Zimmerman's failure to stop and render assistance immediately proximately caused Mr. Zimmerman to rear-end her, or worsen her injuries resulting from that collision.

In sum, no reasonable juror could find or infer from plaintiff's adduced facts that Mr. Zimmerman's failure to timely stop and render assistance caused Mr. Zimmerman to rear-end plaintiff or enhanced her injuries. Because the theory fails on proximate cause, the court doesn't evaluate whether plaintiff's injury is the type of harm the legislature sought to prevent by enacting Kan. Stat. Ann. § 8-1604. The court thus grants summary judgment for Mr. Zimmerman and Mr. Hanchett on plaintiff's theory of liability contending that Mr. Zimmerman was negligent per se because he didn't stop and render assistance immediately following the accident.

## V.    Conclusion

For the reasons explained above, the court grants Mr. Kaser and Mr. Nichols's Motion for Partial Summary Judgment (Doc. 97) in part and denies it in part. The undisputed summary judgment facts, viewed in plaintiff's favor, present a triable issue whether Mr. Kaser acted wantonly, and whether Mr. Nichols ratified Mr. Kaser's allegedly wanton conduct. The court thus denies Mr. Kaser and Mr. Nichols's motion for summary judgment against plaintiff's

request to recover punitive damages from them.  Separately, the court concludes that plaintiff has failed to adduce sufficient evidence to support her theory that Mr. Kaser is negligent per se because his semi-truck didn't have a license plate.  The court thus grants Mr. Kaser and Mr. Nichols's request for summary judgment on this negligence per se theory.

On the second motion, the court grants Mr. Zimmerman and Mr. Hanchett's Motion for Partial Summary Judgment (Doc. 95) in part and denies it in part.  On the undisputed summary judgment facts, viewed in plaintiff's favor, plaintiff has adduced facts which could permit a finding that Mr. Zimmerman acted wantonly, and that Mr. Hanchett ratified his conduct.  The court thus denies Mr. Zimmerman and Mr. Hanchett's motion for summary judgment against plaintiff's request to recover punitive damages from them.  Separately, the court concludes that plaintiff has failed to adduce sufficient evidence to support her theory that Mr. Zimmerman is negligent per se because he violated Kan. Stat. Ann. §§ 8-1604 and 8-1602(a).  The court thus grants Mr. Zimmerman's and Mr. Hanchett's request for summary judgment against this negligence per se theory.  The court denies the motion in all other respects.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant John H. Kaser's and defendant Kendall L. Nichols's Motion for Partial Summary Judgment (Doc. 97) is denied in part and granted in part.

**IT IS FURTHER ORDERED THAT** defendant Hanchett Farms & Cattle Co., LLC's and defendant Dennis J. Zimmerman's Motion for Partial Summary Judgment (Doc. 95) is denied in part and granted in part.

**IT IS SO ORDERED.**

Dated this 4th day of January, 2024, at Kansas City, Kansas.

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge