IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROBIN D. POST,

                Plaintiff,

v.

DALE R. HANCHETT a/k/a DALE
HANCHETT FARMS & CATTLE CO.,
LLC, DENNIS J. ZIMMERMAN,
KENDALL L. NICHOLS a/k/a KENDALL
NICHOLS, JR., and JOHN H. KASER,

                Defendants.

Case No. 21-2587-DDC

**MEMORANDUM AND ORDER**

      This matter comes before the court on defendants Kendall Nichols and John Kaser's Motion to Exclude Plaintiff's Expert Adam Grill (Doc. 107). *See also* Doc. 108. Plaintiff retained Mr. Grill to offer expert testimony about commercial truck driving and tire blowout causation. Nichols and Kaser ask the court to prohibit plaintiff from introducing Mr. Grill's testimony during trial. This Order defers judgment on Mr. Grill's testimony on commercial truck driving. But it grants Nichols and Kaser's Motion to Exclude (Doc. 107) Mr. Grill's testimony about tire blowout causation for the reasons below.

    **I.**    **Background**

      Defendants Kendall Nichols and John Kaser have moved to exclude plaintiff's expert, Adam Grill. Doc. 107; Doc. 108. Defendants contend that Mr. Grill's opinions don't meet the standards established in Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharm., Inc.*,[1] and *Kumho*

---

[1]    509 U.S. 579 (1993).

*Tire Co. v. Carmichael*.[2]  Defendants don't necessarily ask to exclude all of Mr. Grill's testimony.  Instead, their memorandum confines their request, limiting it to Mr. Grill's opinion "that overloading and poor maintenance contributed to cause the tire on the trailer being pulled by Defendant Kaser to blowout."  Doc. 108 at 5.  In short, defendants reason that Mr. Grill lacks "the requisite skill, training, experience, or education in order to offer opinions on the likely cause of the tire blowout."  *Id.*  Plaintiff opposes the motion.  Doc. 127.  The court discusses the gist of the parties' arguments in the Analysis section of this Order.  But first, the court outlines the legal standard governing this dispute.

## II.      Legal Standard

A party may rely on a qualified, expert witness to offer opinion testimony if that party "demonstrates to the court that it is more likely than not that" the expert's testimony "will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  The proponent also must demonstrate that the expert's "testimony is based on sufficient facts or data," it "is the product of reliable principles and methods," and it "reflects a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702(b)–(d).  District courts must exercise "an important gatekeeping function" over proposed expert opinions, "ensur[ing] that all [such] evidence is both relevant and reliable."  *Roe v. FCA US LLC*, 42 F. 4th 1175, 1180 (10th Cir. 2022).  "To fulfill its gatekeeping role, a district court must therefore conduct a two-part inquiry."  *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005).

The first step focuses on the putative expert's basis for his testimony.  Is the witness a reliable voice for the jury to hear about the issue?  Does the witness rely on sound methods to support his opinions?  Our Circuit explains step one this way:

---

[2]      526 U.S. 137 (1999).

> First, a district court must determine if the expert's proffered testimony—whether it concerns scientific, technical, or other special knowledge—has a reliable basis in the knowledge and experience of his [or her] discipline. By conducting a preliminary inquiry into the expert's qualifications and the admissibility of proffered evidence, a district court fulfills its initial obligation under Fed. R. Evid. 104(a) ("Preliminary questions concerning the qualification of a person to be a witness . . . or the admissibility of evidence shall be determined by the court"). To determine whether expert testimony is admissible requires a trial court to examine "whether the reasoning or methodology underlying the testimony is scientifically valid[.]" *Daubert*, 509 U.S. at 592–93. In order to establish an expert's testimony as reliable, we have held that:
>
>> The plaintiff need not prove that the expert is undisputably correct or that the expert's theory is "generally accepted" in the scientific community. Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements.

*Id.* at 1232–33 (quotation cleaned up) (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)). Indeed, the "2023 amendments to Rule 702 make clear that reliability, both in theory and application, is the hallmark of admissible expert testimony." *BlueRadios, Inc. v. Kopin Corp.*, No. 16-CV-02052-JLK, 2023 WL 9104818, at *3 n.3 (D. Colo. Dec. 27, 2023).

The Supreme Court has identified four factors which guide the district court's expert gatekeeping function:

(1) "whether a theory has been or can be tested or falsified,"

(2) "whether the theory or technique has been subject to peer review and publication,"

(3) "whether there are known or potential rates of error with regard to specific techniques, and"

(4) "whether the theory or approach has 'general acceptance.'"

*Bitler*, 400 F.3d at 1233 (quoting *Daubert*, 509 U.S. at 593–94). This list of factors "is neither definitive nor exhaustive" and the Supreme Court has conferred "wide discretion" on trial judges

3

to decide "how to assess an expert's reliability and in making a determination of that reliability." *Id.* (citing *Kumho Tire*, 526 U.S. at 150).

More recently, the Circuit explained that the reliability inquiry asks "whether the methodology employed by an expert is valid—that is, whether it is based on sufficient data, sound methods, and the facts of the case." *Roe*, 42 F.4th at 1181 (citing *Kumho Tire*, 526 U.S. at 152). And the reliability inquiry doesn't "typically question 'the quality of the data used in applying the methodology or the conclusions produced.'" *Id.* (citing *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1263 (10th Cir. 2014)). But neither *Daubert* nor the Federal Rules of Evidence require "a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Indeed, a court may exclude expert testimony if it concludes "that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

The second *Daubert* step requires district courts to "conduct a further inquiry into whether proposed testimony is sufficiently 'relevant to the task at hand.'" *Bitler*, 400 F.3d at 1234 (quoting *Daubert*, 509 U.S. at 597). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Put differently, the court determines the evidence's relevance by considering "'fit.'" *Bitler*, 400 F.3d at 1234 (quoting *Daubert*, 509 U.S. at 591). The Circuit explained this second gatekeeping step in this fashion:

> A trial court must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact. Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has relevant "fit.". . . Evidence

4

appropriate for one purpose, therefore, may not be relevant for a different purpose, and it is the trial court's task to make this fitness determination.

*Id.* (quoting *Daubert*, 509 U.S. at 591).

And the party seeking to introduce expert testimony "bears the burden of showing that the testimony is admissible." *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013) (citing *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009)).

Now, the court applies this standard to the segment of Mr. Grill's testimony challenged by defendants Nichols and Kaser.

**III.     Analysis**

  **A.     Content of Challenged Opinions and Mr. Grill's Report**

Mr. Grill divides his expert report into two sections. The report's first section (part II, sections A, B, and C) provides opinions about commercial truck driving safety. Those opinions go to the responsibilities of co-defendants Mr. Zimmerman and Hanchett Farms. *See* Doc. 106-1 at 3–8. This Order doesn't address those opinions. The report's second section (part II, section D) opines about tire blowout causation and the "responsibility of Nichols farms and Mr. Kaser." Doc. 106-1 at 9–11. This Order focuses on Mr. Grill's opinion as expressed in this section of his report.

The report provides a single passage containing an opinion about defendants Nichols and Kaser. There, Mr. Grill opines:

> As can be seen through the weight tickets provided by Nichols Farms, their trailers routinely ranged in the area of 80,000 pounds plus to above 90,000 pounds per load. This constant weight puts strain on the tires and in doing so, can cause blowouts like the one suffered by the trailer that Mr. Kaser was hauling. Poor maintenance and continual overloading is also a likely contributor to the tire failure.

Doc. 106-1 at 11.

Striving, apparently, to fulfill his duty to provide "a complete statement of all opinions the [expert] witness will express and the basis and reasons for them," Fed. R. Civ. P. 26(a)(2)(B)(i), Mr. Grill includes the following in his report:

- scale tickets produced by Nichols Farm showing that, over a seven month period, the Nichols Farms' vehicles which operated on roadways weighed between 54,120 and 99,520 pounds;

- an opinion that "[h]eavily loaded and overloaded trucks are known to add to the stresses that can ultimately cause a tire failure"; and

- extensive quotations from three sources about those sources' views on the causes of tire blowouts.[3]

Doc. 106-1 at 9–11. But that's it. The report identifies no other material about the basis and reasons for Mr. Grill's opinion that "[p]oor maintenance and continual overloading" likely contributed to the tire failure. *Id.* at 11.

### B. Defendants' Arguments

Defendants attack Mr. Grill's tire opinions with two basic arguments. *First*, they contend that he lacks the necessary qualifications to offer opinions about the cause of the tire's blowout. Doc. 108 at 5–6. *Second*, they assert that Mr. Grill's opinion about the tire's failure lacks the requisite reliability because: (a) Mr. Grill doesn't base his opinion on sufficient facts or data; and (b) his opinion isn't derived from reliable principles. *Id.* at 6–9. The court addresses these

---

[3] The three sources quoted in Mr. Grill's report are Hale Trailer Brake & Wheel, Roane Transportation, and Middleton & Meads Company. Doc. 106-1 at 9–11. The report never identifies who Hale and Roane are, or what qualifies either one of them to provide reliable input about the causes of tire failures. In contrast, the report identifies Middleton & Meads as "a bus and truck service company [who] has been in business since 1917[.]" But save this lone reference to Middleton & Meads' longevity, Mr. Grill provides no additional information about the sources.

two arguments, below. But the court's analysis begins with a third deficiency: Mr. Grill's qualifications to testify about the cause of the tire's blowout.

### 1. Rule 702 and Expert Qualifications

Rule 702 of the Federal Rules of Evidence permits a "witness who is qualified as an expert by knowledge, skill, experience, training, or education [to] testify in the form of an opinion or otherwise" if the witness's proponent satisfies the other requirements of this same rule. *Id.* Defendants contend plaintiff hasn't satisfied this threshold requirement because plaintiff provided nothing suggesting that Mr. Grill had "any experience or training" in investigating causes of tire blowouts; no educational background demonstrating specialized knowledge about this subject; and no experience in tire blowout causes. Doc. 108 at 6.

Plaintiff barely puts up a fight on this question. Instead, she limits her response to this: Adam Grill "is a second-generation trucking expert with over 15 years of combined experience as a truck driver, truck-driving instructor, truck-driving consultant, accident investigator, [and] forklift and heavy equipment operator." Doc. 127 at 4. Also, plaintiff explains, Mr. Grill holds a commercial driver's license with hazardous materials and various endorsements. And she notes that Mr. Grill has operated commercial motor vehicles in 49 states, and even has taught truck and heavy vehicle operation to members of our military. *Id.* Plaintiff reasons that "[t]herefore, Mr. Grill must have the expertise to identify when a truck (including its tires) is in such a defective state." *Id.* at 5.[4]

Indeed, Mr. Grill's CV and his report's contents confirm that he lacks the pertinent knowledge, skill, experience, training, or education. His CV barely refers to tires at all. *See*

---

[4] Plaintiff also argues that Mr. Grill grew up "in a family centered on truck driving and truck driver training," Doc. 127 at 5, and notes the qualifications of Mr. Grill's father, Lew Grill. Plaintiff doesn't cite any authority for the premise that Rule 702 expertise can be handed down from one generation to the next.

Doc. 106-1 at 13–23.  The court's review found just one such reference—a project started in 2016 about the assessment of truck safety technologies.  *Id.*  This project, Mr. Grill's CV reports, includes "tire pressure monitoring" systems and tire pressure balancing systems.  *Id.* at 16.  But this project, standing alone, isn't enough.

Plaintiff hasn't shouldered her burden to show that this experience provides skill, experience, or training about the causes of tire blowouts.  Although Mr. Grill has experience as a "truck driver, truck-driving instructor, truck-driving consultant, accident investigator, forklift and heavy equipment operator[,]" that experience doesn't sufficiently qualify him to testify about tire blowouts and what causes them.  Doc. 127 at 4; *see Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1133–34 (10th Cir. 2009) (affirming the district court's decision to exclude expert testimony about mountain bike races when the expert had "experience organizing and supervising paved road races").  And the court isn't convinced that Mr. Grill may testify about any truck or truck driving related issue—including tire failure—merely because he possesses a CDL.  *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (affirming the district court's decision to exclude expert testimony because "merely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue").

In sum, the court finds that plaintiff has failed to demonstrate that her expert, Adam Grill, is qualified under Fed. R. Evid. 702 to opine about the cause of "blowouts like the one suffered by the [tire on the] trailer that Mr. Kaser was hauling."  Doc. 106-1 at 11.  Nor has plaintiff shown he is qualified to opine that "[p]oor maintenance and continual overloading is also a likely contributor to the tire['s] failure."  *Id.*[5]

---

[5] This conclusion—that Mr. Grill lacks the requisite expertise to testify about causes of tire failure—doesn't mean he's unqualified to render expert opinions on other subjects.  Nichols and Kaser's motion only challenges the tire failure component of Mr. Grill's expert report.

### 2. Mr. Grill's Tire Causation Opinion Lacks Sufficient Facts and Data

While the court could end its analysis after the 702 conclusion, the court, out of caution, continues and addresses the first step in the *Daubert*/*Kumho* analysis by considering the following question: Does Mr. Grill's tire failure opinion have a reliable basis in knowledge and experience of the expert's discipline? This step focuses on the "reasoning or methodology underlying the testimony." *Bitler*, 400 F.3d at 1233 (quoting *Daubert*, 509 U.S. at 592–93).

Defendants contend that Mr. Grill based his opinions on his review, first, of photographs of the blown out trailer tire (taken after the accident) and, second, of weight tickets. Doc. 108 at 7. The weight tickets identify the weights of different loads hauled on the trailer defendant Kaser's truck was pulling when the accident occurred. *Id.* Plaintiff's response to the motion confirms the same. *See* Doc. 127 at 7 (reporting that Mr. Grill reviewed "[l]aw enforcement photographs of crash location, tire damaged by the blowout"). One could read aspects of the record, though, to suggest that the expert reviewed the shredded blown tire itself—not just a photograph. Doc. 127-3 at 13 (listing "Shredded Tire1" as materials and information Mr. Grill reviewed to write his report). In the end, the court needn't conduct a hearing to resolve this ambiguity—or any other aspect of Mr. Grill's tire causation opinion. That's so because Mr. Grill's report demonstrates that his tire opinion lacks a reliable basis in knowledge and experience. *See Bitler*, 400 F.3d at 1233.

When it comes to the requirement of reliability in knowledge or experience, Mr. Grill's report has none. Mr. Grill reasons that "[h]eavily loaded and overloaded trucks are known to add to the stresses that can ultimately cause a tire failure." Doc. 106-1 at 9. The only reasoning Mr. Grill provides to support this opinion follows immediately after, three long quotations of generalized opinions from Hale Trailer Brake & Wheel, Roane Transportation, and Middleton & Meads Co. *Id.* at 9–11.

The court realizes that experts may rely on sources not in evidence. *See* Fed. R. Evid. 703. "Rule 703, however, is not an open door to all inadmissible evidence disguised as expert opinion." *United States v. Scrima*, 819 F.2d 996, 1002 (11th Cir. 1987). An expert may not appropriate someone else's opinion, reprint it in a report, and then testify about what someone else—someone not subject to cross examination—has opined. "If an expert simply parrots another individual's out-of-court statement, rather than conveying an independent judgment that only incidentally discloses the statement to assist the jury in evaluating the expert's opinion, then . . . the expert thereby becomes little more than a backdoor conduit for an otherwise inadmissible statement." *United States v. Pablo*, 696 F.3d 1280, 1288 (10th Cir. 2012); *see also Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (applying this concept to a civil case).

But even if expert witnesses could utilize this adoption technique advanced by Mr. Grill's report, such borrowed testimony wouldn't fix the reliability shortcoming of Mr. Grill's tire opinion. Nothing in Mr. Grill's report connects these borrowed opinions to existing data or the facts of this case. Indeed, the only connection between the borrowed opinions and this case's facts is Mr. Grill's "*ipse dixit*" assertions. *Roe*, 42 F.4th at 1181 (quoting *Gen. Elec.*, 522 U.S. at 146); *See* Doc. 127-3 at 11 (opining abstractly that "[p]oor maintenance and continual overloading is also a likely contributor to the tire failure" without explaining how defendants poorly maintained or overloaded the tire which failed). In sum, the court finds "that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec.*, 522 U.S. at 146. The court finds the borrowed opinions unreliable.

This issue merits a final observation. Plaintiff responds to defendants' motion to exclude Mr. Grill's testimony about tire failure causation by explaining the case's discovery timeline.

She notes that Mr. Grill issued his report in October 2022. Plaintiff took Mr. Nichols and Kaser's deposition about five months later, on April 10 and 11, 2023. Doc. 127 at 10. Plaintiff contends that this timeline deprived Mr. Grill of the evidence acquired in the Kaser and Nichols depositions to use in his expert report. Plaintiff reports that Mr. Grill since has reviewed the deposition evidence, and it didn't change his opinions. Plaintiff reports also that Mr. Grill "is willing to submit an additional report addressing these" methodology and reasoning issues. Doc. 127 at 7. Unfortunately for plaintiff, that's not how the Federal Rules of Civil Procedure work.

Rule 26 requires that expert witnesses must provide a written report. This report, among other things, must provide "a complete statement of all opinions the witness will express and the basis and reasons for them[.]" Fed. R. Civ. P. 26(a)(2)(B)(i). A party who "has made a disclosure under Rule 26(a)"—as plaintiff did with Mr. Grill's report—"must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete[.]" Fed. R. 26(e)(1)(A); *see also Arnold v. CNH Industrial America, LLC*, 2023 WL 6312266, No. 21-2341-DDC,*4 (D. Kan. Sept. 28, 2023) (explaining that "Rule 26(e)(1) imposes an ongoing duty for parties to supplement or correct an expert report"). The disclosing party also may make the supplemental material known to the opposing parties in some other fashion. Fed. R. 26(e)(1)(A). "But Rule 26(e)(1) does not give the parties a right to disclose information in an untimely fashion." *Arnold*, 2023 WL 6312266, at *4 (cleaned up). Plaintiff never suggests she supplemented Mr. Grill's report or otherwise made it known to defendants that he has developed additional reasoning for his opinions. So, plaintiff's timeline argument isn't persuasive.

In sum, Mr. Grill's expert opinions fail *Daubert* step one. Plaintiff fails to establish that (1) Mr. Grill is qualified to offer expert opinions about tire blowout causation; and (2) that Mr. Grill bases his tire causation opinion on sufficient facts and data.

Because plaintiff's expert fails *Daubert* step one—reliability—the court needn't progress to *Daubert* step two and inquire about the testimony's relevance. *Boone v. State Farm Fire & Cas. Co.*, No. 21-CV-00432-GKF-SH, 2023 WL 8470623, at *2 (N.D. Okla. Dec. 7, 2023) (noting that the Advisory Committee "recently emphasized" in their comments to the 2023 Rule 702 amendments, that courts "must find the testimony is not only helpful to the trier of fact, but also that it meets the other three requirements in the rule—a sufficient basis of facts or data, reliable principles and methods, and a reliable application of those principles and methods to the facts"). The court must exercise its "gatekeeping" function and here, that duty leads it to exclude Mr. Grill's testimony about tire blowout causation.

## IV.     Conclusion

For reasons expressed in this Order, the court grants defendants Kendall Nichols and John Kaser's Motion to Exclude Plaintiff's Expert (Doc. 107). The court excludes the tire failure causation opinions expressed in expert Adam Grill's expert report.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants Kendall Nichols and John Kaser's Motion to Exclude Plaintiff's Expert Adam Grill (Doc. 107) is granted.

**IT IS SO ORDERED.**

**Dated this 7th day of February, 2024, at Kansas City, Kansas.**

                                         **s/ Daniel D. Crabtree**
                                         **Daniel D. Crabtree**
                                         **United States District Judge**