IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROBIN D. POST,

    **Plaintiff,**

v.

              Case No. 21-2587-DDC

DALE R. HANCHETT, et al.,

    **Defendants.**

## MEMORANDUM OPINION

Plaintiff Robin Post seeks to recover punitive damages from defendants Hanchett Farms & Cattle Co., LLC, Dennis Zimmerman, Kendall Nichols, and John Kaser. Each defendant sought summary judgment against the punitive claim, but the court denied their motions. *See* Doc. 111 at 11–23 (Kaser and Nichols analysis), 29–43 (Zimmerman and Hanchett analysis). Two defendants—Mr. Zimmerman and Hanchett Farms—asked the court to reconsider its decision. Doc. 116; Doc. 117. They assert the court "obviously misapprehended the facts of this case and the applicable law" as it applies to the punitive claim. Doc. 117 at 1. Plaintiff responded. Doc. 147.

The court heard argument on the Motion to Reconsider during a final pretrial conference conducted on February 12, 2024—the morning the trial began. *See* Doc. 165. The court then informed the parties that it was denying the Motion to Reconsider and proceeding with the trial.

Also, the court announced it would explain its reasoning in a written order to follow. This Memorandum Opinion provides that reasoning.[1]

The grounds "warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (discussing Fed. R. Civ. P. 59(e)'s requirements); *see also* D. Kan. Rule 7.3(b) (explaining reconsideration of non-dispositive orders must be based on "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice"). Defendants' Motion to Reconsider (Doc. 117) satisfies none of the three requirements.

## I.     Analysis

Defendants offer three main reasons why the court should reconsider its Order denying their Motion for Summary Judgment on plaintiff's request for punitive damages. Doc. 117. *First*, the court purportedly failed to analyze the "imminence" element correctly. *Id.* at 4–6. *Second*, the court failed to consider the evidence. *Id.* at 6–11. And *third*, the court erroneously relied on deposition testimony when defense counsel had objected to the question. *Id.* at 11–16.

### A.     Imminence Analysis

First, the moving defendants attack the court's imminence analysis. In short form, Kansas law requires a plaintiff seeking punitive damages to prove, by clear and convincing evidence, that defendant acted with willful conduct, wanton conduct, fraud, or malice. Kan. Stat. Ann. § 60-3701(c). Plaintiff here claims wanton conduct supports a punitive damage

---

[1] Since the court announced its decision, pretrial, the court has submitted plaintiff's claim of wanton conduct against Mr. Zimmerman to the jury. It returned a finding that his conduct was not wanton. The court nonetheless enters this Memorandum Opinion because it explains the court's reasoning for denying reconsideration during the pretrial conference.

submission.  This claim means plaintiff must show that defendant acted with:  (1) "'a realization of the imminence of danger;'" and (2) "'reckless disregard [of] or complete indifference to the probable consequences of the act.'"  *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244 (10th Cir. 2009) (quoting *Reeves v. Carlson*, 969 P.2d 252, 256 (Kan. 1998)).  At summary judgment, the court concluded that defendants hadn't carried their burden to demonstrate that plaintiff had failed to adduce facts permitting a reasonable jury to find, by clear and convincing evidence, that the moving defendants had acted wantonly.  Doc. 111 at 38–39.  Defendants argue that the court reached this decision erroneously because it mistakenly relied on "Mr. Zimmerman's general knowledge of dangers of driving a semi" but the court "did not address or find, in any way, imminence, which is a required predicate" for a punitive claim.  Doc. 117 at 4–6.

The court rejects the premise of defendants' argument.  To begin, the court summarized the requirements of Kansas law.  It explicitly identified the requisites for a punitive claim.  *See* Doc. 111 at 12–13.  Then, the court applied these requirements to the summary judgment facts for both moving defendants.  *Id.* at 30–39 (Zimmerman), 39–43 (Hanchett).  Defendants are free to disagree with the court's analysis but it's simply incorrect to say—as moving defendants do—that the court didn't address or find imminence.  *See* Doc. 117 at 4.  There's no good reason to repeat that analysis again.

The moving defendants close their imminence arguments with a second-level attack. They assert that the court based its reasoning about imminence "only" on "general knowledge, [and] not imminence in this situation."  *Id.* at 6.  Kansas law, defendants argue, won't permit an imminence finding based entirely on general knowledge and, instead, requires a finding of "imminence in this situation."  *Id.*  But during oral argument, defense counsel conceded that he

3

couldn't identify any legal authority supporting his nuanced view of imminence. The court's research yields authority rejecting defendants' proposition.

In *Reeves v. Carlson*, the Kansas Supreme Court reviewed a punitive damages award against a driver of a one-ton Chevy pick-up truck. 969 P.2d at 254. The defendant driver had split a six-pack of beer with a co-worker and then consumed six to eight mixed drinks. *Id.* He then drove his pick-up truck, loaded with a 500-gallon steel sewage tank. *Id.* at 254–55. Aware that he was intoxicated, and thus "could cause harm to himself and others[,]" he drove residential streets hoping to minimize his chances of detection. *Id.* at 254. Distracted, he failed to turn as he approached a "T" intersection and crashed through the front of a professor's home. *Id.* at 254–55. The impact of truck and house bounced the professor out of the chair she occupied inside her house, forced her against "the living room wall, the cabinets in her kitchen, and the refrigerator." *Id.* at 255. She sustained head and other injuries. *Id.*

When arrested, the driver admitted he couldn't pass a breathalyzer test. Also, he conceded, he shouldn't have driven in his impaired condition. *Id.* Later, the driver pleaded guilty to aggravated battery, driving under the influence of alcohol, driving while suspended, and transporting an open container. *Id.*

The professor sued and a jury awarded her about $10,800 in actual damages and returned a punitive finding against the driver. Implementing a procedure in Kansas law, the trial court judge then decided the amount of punitive damages. The judge imposed a $10,000 punitive damage award against the driver based on his wanton conduct. *Id.*

At trial, the driver moved for a directed verdict, arguing that plaintiff provided insufficient evidence for a jury to find that defendant's conduct was wanton. The trial court denied defendant's motion and defendant challenged the ruling on appeal before the Kansas

4

Supreme Court.  Importantly, as applied here, the Kansas Supreme Court explained that "[w]antonness refers to the mental attitude of the wrongdoer rather than a particular act of negligence."  *Id.*  Also, the Kansas court rejected the argument that the moving defendants make here.

Specifically, the drunk driving defendant argued that he wasn't liable for a punitive award because "he had no reason to anticipate a collision with a house, much less with [the particular] house" he hit.  *Id.*  Thus, defendant reasoned, no one reasonably could say "that he was aware of the impending danger."  *Id.*  The Kansas Supreme Court rejected this idea, and its reasoning dooms defendants' argument here:

> [The driver] too narrowly defines what it means to commit a wanton act.  In order for a plaintiff to prove wanton conduct, it is not necessary that the plaintiff's evidence establish a formal and direct intention to injure any particular person.  It is sufficient if the defendant evinced that degree of indifference to the rights of which may justly be characterized as reckless.

*Id.*  Finally, the Kansas court identified the kind of broad-based risk required to support a finding of "the imminence of danger."  *Id.*  The impaired driver "was acutely aware of the risk he was taking when he decided to drive his employer's pickup truck in his extremely intoxicated state at night on wet residential streets."  *Id.*  Put differently, the driver "possessed the requisite degree of knowledge of danger."  *Id.*

*Reeves* persuades the court that a reasonable factfinder could find that defendant Zimmerman acted recklessly by following a car too closely while driving a loaded semi-truck at excessive speed.  The court cannot predict whether the jury will accredit plaintiff's version of the facts.  But if it does, the jury reasonably could find that Mr. Zimmerman acted with the requisite

5

knowledge of imminent danger.  The court thus rejects the moving defendants' first argument for reconsideration.[2]

## B.     Moving Defendants' Other Three Arguments

Defendants' other three arguments generally assert that the court failed to consider necessary evidence at summary judgment.  Doc. 117 at 6–11.

### 1.     Failure to Consider "Necessary" Evidence

The court correctly credited conflicting evidence in plaintiff's favor and declined to attribute weight to evidence that the moving defendants favor.

A party may move for summary judgment under Fed. R. Civ. P. 56 if it can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue."  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense."  *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).  And where controverted, the court states the facts in the light most favorable to plaintiff, the party opposing summary judgment.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

Defendants assert that the court erroneously failed to consider favorable testimony about the distance and speed of the vehicles.  The Order credited Mr. Zimmerman's testimony (*i.e.*, that just 50 yards (150 feet) separated his truck and plaintiff's vehicle when the tire failed on the truck ahead) instead of Ms. Bailey's testimony (*i.e.*, that the distance spanned 200–300 yards

---

[2]     Plaintiff's punitive claim against Hanchett Farms and Cattle Co., L.L.C. theorizes that this company—who employed Mr. Zimmerman—ratified his wanton conduct.

(600–900 feet)). Doc. 111 at 28. The Order also credited Ms. Bailey's testimony that, she reentered her lane of travel after swerving around the tire piece, about 75 yards in front of Mr. Zimmerman's truck. *Id.* at 4. Mr. Zimmerman testified, in contrast, that that plaintiff's vehicle was just four or five feet in front of his truck when it pulled back in front of him. *Id.* The court's summary judgment order correctly applied the version of this conflicting testimony that favored plaintiff. The court's approach comported with its duty to view the facts in the light most favorable to the non-moving party. *Scott*, 550 U.S. at 378.

Next, defendants argue that the court should've credited Mr. Zimmerman's "organic descriptions of there not being enough room to swerve" because such testimony is "much more compelling and convincing than a set of leading questions that eventually elicited a response that he chose to rear-end the plaintiff's vehicle." Doc. 117 at 9. This argument fails because defendants misapprehend the legal standard applied at summary judgment. A "summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences." *Duffee ex rel. Thornton v. Murray Ohio Mfg. Co.*, 160 F.R.D. 602, 604 (D. Kan. 1995) (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of the finder of fact, not the functions of the judge when ruling on a motion for summary judgment." *Petrol. Prods., Inc. v. Total Petrol., Inc.*, 795 F. Supp. 356, 358 (D. Kan. 1992), *aff'd*, 986 F.2d 1428 (10th Cir. 1993). Whether portions of Mr. Zimmerman's testimony are more "compelling and convincing" than others is a question reserved for the jury—not one for the court at summary judgment.

This conclusion doesn't mean that *any* conflict in the summary judgment facts necessarily dooms a summary judgment motion. *Anderson v. Liberty Lobby, Inc.* is explicit on this subject.

> If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

477 U.S. at 252. Thus, the federal summary judgment standard doesn't mean that even one fact favoring a punitive damages finding necessarily dooms a motion for summary judgment against the punitive claim. For instance, where the rest of the summary judgment facts so overwhelmingly disfavor a punitive finding, a federal court properly could grant summary judgment against the punitive claim. But that scenario isn't this case.

For one thing, the summary judgment facts here are more mixed. For another thing, that's not even the argument the moving defendants make in their reconsideration motion. Instead, defendants ask the court to evaluate the plausibility of the witnesses' competing versions of the evidence about following distance. And that approach is not one that Federal Rules of Civil Procedure will abide.

In sum, the court declines the moving defendants' invitation to reevaluate and then weigh the competing evidence about following distance.

### 2. Erroneously Considering Objected-to Deposition Testimony

Last, defendants argue that the court erroneously relied on Mr. Zimmerman's deposition testimony that he made a conscious decision to collide with plaintiff's vehicle instead of swerving onto the shoulder because defense counsel objected to the questioning. Doc. 117 at 11.

The court isn't persuaded.  It correctly considered Mr. Zimmerman's challenged testimony when it ruled on defendants' Motion for Summary Judgment.  Doc. 111 at 28, 35–36.

Defendants initially reference an excerpt of testimony where Mr. Zimmerman testifies that he could have steered onto the shoulder of the highway.  Doc. 117 at 12–14.  Defendants since have elaborated on their objection to the testimony and the court sustained their trial objection.  But, at summary judgment, the court lacked defendants' explanation about their objection because defendants' summary judgment briefs never argued that it shouldn't consider this testimony.  *See* Doc. 95; Doc. 96; Doc. 103 at 5–6.  In a motion to reconsider, it is not appropriate to advance arguments that the party could have raised in prior briefing.  *Servants of the Paraclete*, 204 F.3d at 1012.

Defendants' argument fails on its merits, too.  Defense counsel merely objected "to the form" of the question  Doc. 117 at 14.  Defense counsel could've objected the first time with requisite specificity.  "Although the [Local Deposition] Guidelines talk about objections based on the 'form' of the question . . . this does not mean that an objection may not briefly specify the nature of the form objection (*e.g.*, 'compound,' 'leading,' 'assumes facts not in evidence')." *Cincinnati Ins. Co. v. Serrano*, No. 11-2075-JAR, 2012 WL 28071, at *5 (D. Kan. Jan. 5, 2012); D. Kan. Dep. Guidelines 5(a); Fed. R. Civ. P. 30(c)(2).  "When called upon to rule on an unspecified 'form' objection, a judge either must be clairvoyant or must guess" the objection's basis.  *Sec. Nat'l Bank of Sioux City, Iowa v. Abbott Lab'ys*, 299 F.R.D. 595, 603 (N.D. Iowa 2014), *rev'd on other grounds*, 800 F.3d 936 (8th Cir. 2015).  The court thus declines to reconsider its Order based on this unavailable hindsight.

The second piece of defendants' argument on this front focuses on a different excerpt of deposition testimony.  There, Mr. Zimmerman said he made a conscious choice to hit plaintiff's

9

vehicle. Doc. 117 at 16–18. Defendants argue that the court erroneously considered this testimony despite defense counsel's objection. *Id.* The court has since reviewed the parties' deposition designations ahead of trial and overruled the objection to this question. This ruling moots defendants' argument about whether the court properly considered defendant's testimony.

## II. Conclusion

To conclude, the court denied defendants' Motion to Reconsider (Doc. 116) for reasons explained by this Order. The earlier Order (Doc. 111) stands.

**Dated this 26th day of February, 2024, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
